[L. A. No. 1197.   Department Two.—January 10, 1903.]

## H. C. GOODELL, Appellant, v. VERDUGO CAÑON WATER COMPANY, Respondent.

CORPORATIONS—CONTRACT AUTHORIZED BY INTERESTED DIRECTORS—IN-VALIDITY.—Directors of a corporation who are directly and personally interested in a contract, adversely to the stockholders, cannot authorize the contract on behalf of the corporation, and a contract attempted to be so authorized by them is void.

ID.—OPENNESS OF CONTRACT.—The fact that the contract was open and that the profit to be derived therefrom was not secret, cannot render the contract valid. The publicity alone of an illegal and unauthorized act of the directors of a corporation does not make it legal or valid.

ID.—CORPORATION NOT ESTOPPED.—The corporation was not estopped by any acts on the part of the interested directors who assumed to authorize the illegal contract from setting it aside for illegality. Their action in allowing the expenditure of money on the faith of

the contract cannot estop the corporation when it received no benefit whatever under the contract, but said directors and their associates were to receive all of its benefits. The fact that part of the stockholders were interested with the directors, and received a benefit which properly belonged to all of the stockholders, cannot estop the corporation.

ID.—INTERFERENCE WITH WATER RIGHTS OF CORPORATION.—Where it appears that the contract authorized by the interested directors was for the pumping of water, which interfered with water rights belonging to the corporation and deprived its stockholders of water they were entitled to receive, such deprivation is an additional ground for annulment of the contract.

ID.—ACTION TO ENFORCE CONTRACT—CROSS-COMPLAINT—PARTIES—ANNULMENT OF CONTRACT.—In an action by a plaintiff whose rights depended on the enforcement of the illegal contract made by the interested directors of the corporation defendant, the corporation may by cross-complaint bring in a new party who was a party to the contract and attack the validity of the contract and seek to have it annulled.

ID.—EQUAL DISTRIBUTION OF WATER—RIGHTS OF CORPORATION—CHANGE OF METHOD.—The corporation had the authority to establish the original method of distribution of the water belonging to it equally among its stockholders, and to change the method so as to avoid supplying the plaintiff stockholder, who claims under the illegal contract, with a greater portion of the company's water than he was entitled to by virtue of the shares held by him.

ID.—IMPROPER EVIDENCE.—Evidence offered as to the condition of affairs when the contract was made which could not justify nor validate the illegal act of the directors in making the contract, and evidence offered upon the subject of estoppel while the old board was in office, was properly rejected as immaterial.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Lucien Shaw, Judge.

The facts are stated in the opinion.

James Burdett, for Appellant.

The contract was open, and no *secret* profit was derived from it. The case is not within the rule that a trustee is prohibited from making a profit out of his trust relation. (3 Thompson on Corporations, sec. 4025; *Twin Lick Oil Co.* v. *Marbury,* 91 U. S. 587.) The company is estopped from claiming a forfeiture of the contract. (*Twin Lick Oil*

*Co.* v. *Marbury* 91 U. S. 587; 3 Thompson on Corporations, sec. 4047; *Tyler* v. *Hamilton,* 62 Fed. 187; *Lady Washington L. Co.* v. *Wood,* 113 Cal. 489.)    The cross-complaint was improper in setting up matters forming no part of the controversy between plaintiff and defendant.    (*Lewis* v. *Fox,* 122 Cal. 250; *Savings Bank* v. *Middlekauff,* 113 Cal. 463; *Harrison* v. *McCormick,* 69 Cal. 618; *Demartini* v. *Albert,* 68 Cal. 280; *Silver Creek etc. Co.* v. *Hayes,* 113 Cal. 145; *Yorba* v. *Ward,* 109 Cal. 110; *Clark* v. *Taylor,* 91 Cal. 554; *Hoffman* v. *Remnant,* 72 Cal. 1.)

Works, Lee & Works, for Respondent.

The contract relied upon by the plaintiff was void, and was properly annulled under the cross-complaint.    As to the illegality of the contract made by the directors, under the circumstances of this case, it is only necessary for us to cite the decisions of this court:    *Wilbur* v. *Lynde,* 19 Cal. 290; [1] *Davis* v. *Rock Creek L. F. and M. Co.,* 55 Cal. 359; [2] *Smith* v. *Immigration etc. Assn.,* 78 Cal. 289; [3] *Graves* v. *Mono Lake etc. Mining Co.,* 81 Cal. 303; *Wickersham* v. *Crittenden,* 93 Cal. 17; *Wickersham* v. *Crittenden,* 106 Cal. 327; *Reclamation District* v. *McCullah,* 124 Cal. 175.    We need not go to Thompson on Corporations, copiously cited by counsel on the other side, or the authorities in other states.    The rule is well settled in California, and by that, of course, we must be controlled.    The company was not estopped, having received no benefit.

CHIPMAN, C.—The prayer of the complaint is for an injunction to restrain defendant from changing the distribution of plaintiff's proportion of water to which he is alleged to be entitled as a stockholder of defendant.    It is averred in the complaint that the purpose of defendant in changing the distribution of plaintiff's share of said water from the hours and in the manner in which he has been receiving it was to coerce the abandonment of a certain contract entered into between the company and plaintiff and one Byram, looking to the development of more water on defendant's land.    Defendant answered, and also filed a cross-complaint making

[1] 19 Am. Dec. 645.    [3] 12 Am. St. Rep. 53.
[2] 36 Am. Rep. 40.

plaintiff and Byram parties defendant thereto, and alleged, among other things, that the contract referred to in plaintiff's complaint was illegal and void. The cross-complainant prayed to have the contract annulled, and that defendants thereto be restrained from excavating or tunneling upon the lands of the cross-complainant or taking water from its land. The pleadings and findings are quite voluminous. The facts found show that defendant is a corporation formed in 1884 (hereinafter called the company), for the purpose of developing and distributing to its stockholders, for purposes of irrigation and domestic uses, the waters of Verdugo Cañon, to be taken to Rancho San Rafael, in Los Angeles County; the stockholders were and are the owners of the water of said cañon, which was developed and controlled by the company for the benefit of the stockholders, by a system of pipes and other facilities for its distribution, and ever since the organization of the company it has continued to distribute said water for the benefit of its stockholders, including plaintiff, pursuant to and in accordance with the rules and regulations established by it for that purpose, as alleged in plaintiff's complaint; among other said regulations, it was provided that all such waters should be distributed in the proportion that the number of shares held by each stockholder bore to the whole number of subscribed shares of the stock, and the court found that such distribution was made by the company up to the present time; that plaintiff is a member of another association, known as the Verdugo Park Water Development Association (hereinafter referred to as the association), composed of twenty or more persons; that on August 8, 1899, plaintiff and said Byram entered into a lease or contract with the company looking to the exploration for and development of more water in said cañon; this lease or contract was for the benefit of the association, and attempted to authorize said parties to enter upon land jointly owned by the company and Ross and Thom and erect thereon a pumping plant for the purpose of pumping water and distributing the same; at the time this contract was entered into a majority of the directors of the company were not members of the association, but had at that time determined to become members thereof and receive the benefits of said contract, and were at the time interested in the contract adversely to the company,

and the contract was authorized only by the vote of the directors so interested, without whose votes the contract could not, and would not, have been authorized; that if the right to pump water under said contract should be exercised by plaintiff and his associates, the stockholders of the company would be deprived of a part of the water to which they are entitled, and which they have been receiving through the distributing system of the company, and would be irreparably injured by reason of such development and diversion of water by the association; thereafter, on November 24, 1899, the same board of directors voted in favor of amending the contract, interlining therein the words "drive tunnels and make other excavations," thereby authorizing plaintiff and Byram to make other excavations in the water-bearing lands of the company and its stockholders; it was expressly provided in said contract that "the present quantity of water now flowing to said first party [the company] is not to be diminished by such development," and it is found that the excavations made and pumping done by plaintiff under the contract materially and permanently diminished the water supply flowing at the time the contract was entered into, to which all the stockholders of the company were entitled, and prevented the company from distributing it to its stockholders; that the board of directors of the company had no power or authority to enter into such contract, and plaintiff and his associates, defendants to the cross-complaint, are unlawfully and wrongfully holding the lands of the company and its stockholders, and preventing them from using and developing water in the same.

The court also found that the change made in the manner of distribution was for the sole purpose of equalizing the distribution of the water distributed by the company for the benefit of all the stockholders, and to insure to each his just share of the water, and was at the instance of stockholders other than plaintiff who were being deprived of the water to which they were entitled by reason of the manner in which water had been supplied to plaintiff, and for the further reason that "by so regulating the distribution by continual flow of the quantity of water to each of the stockholders entitled, they would each and all share equally and equitably

in the distribution of said water and be alike benefited by the water so supplied." It was also found that for a number of years the company has been by its system supplying its stockholders the waters of said cañon owned by them, and has expended large sums of money in developing additional water, which it has the right to appropriate for the use of, and which it has been supplying to, its stockholders.

As conclusions of law, the court found that plaint'ff take nothing by his action; that the said contract or lease be declared void and canceled; that plaintiff and his associates be enjoined from developing or taking out water from said Verdugo Cañon under said contract. Judgment was accordingly entered. Plaintiff appeals from the judgment and from the order denying his motion for a new trial.

1. The court found that the directors who authorized the contract had at the time determined to become members of the association and within a few days of the meeting of August 8, 1899, "each and all of said members of the board of directors did become members of said association, and all of them were such members when they voted in favor of the amendment of said contract above set forth at the meeting of November 24, 1899; and they each of them were directly interested in the making of said contract; and the contract was executed and accepted by Goodell and Byram for their benefit, in common with the others who were or were to become members of said association." This contract was for the sole benefit of those stockholders only who might join the association and contribute to the development of additional water. The directors who authorized it were directly and personally interested, as the court found, adversely to the stockholders, and there were many who did not belong to the association.

It is contended that the evidence does not justify the finding that a majority of the directors voting to authorize the contract were interested, or intended to become interested, or afterwards became interested in it. There were seven members on the board; five were present August 8, 1899, including plaintiff, and four voted for the contract, plaintiff not voting. At the meeting in November following there were six members present, all voting for the amendment of the contract, except plaintiff not voting. It was admitted by

counsel for plaintiff "that all the directors, with the exception of Pierce and Glassell, were members of the association at the time the amendment was made." There were four interested directors besides plaintiff present and voting for the amendment. At this time work had progressed, but had stopped by permission of the board, to be resumed "in the spring." The amendment was material, and added to the privilege originally given, and as amended was the contract relied on by plaintiff. We have examined the evidence on the point urged, and while there is some conflict, we think there was sufficient to sustain the court in its finding.

Appellant contends that because the action of the directors was open, and not secret, the rule does not apply that a trustee is prohibited from making a profit out of his trust relation. Mr. Thompson is quoted as saying that the rule "means that he must not make a *secret* profit out of it." (3 Thompson on Corporations, sec. 4022.) The publicity alone of an illegal and unauthorized act of the directors of a corporation does not make it legal or valid. Shareholders may, after a full, fair, and complete disclosure of all the circumstances attending a transaction which will benefit the directors who make it, agree that such directors shall retain the special benefit that may accrue from the transaction, and will not afterwards be heard to claim that this benefit shall be surrendered to them as a corporation, as Mr. Thompson suggests. (Sec. 4025.) But we do not understand the author to hold that trustees may validate an illegal act by simply doing it openly; and certainly such contention generally applied would be subversive of the very objects for which the rule is established. We think the court rightly held the contract to be void.

2. It is claimed, however, that, conceding the transaction to be illegal and void, the company is estopped by its own acts from claiming a forfeiture of the contract. The claim is, that the corporation stood by and allowed and encouraged the association to expend their money, and not until after its success was demonstrated did the company take any steps to have the contract set aside. But by the terms of the contract the company was to receive no benefit whatever; nothing was paid to the company for the privilege of taking water

from its land that belonged to the stockholders; it was to receive no part of the water, and was to carry it and distribute it to members of the association free of charge. Furthermore, the directors who entered into the illegal contract, and were to receive its benefits, remained in office during the time referred to by appellant, and shortly after the new board was chosen steps were taken to annul the contract, as duty required of them if they believed it illegal. The laches or negligence of the old board, in not causing the contract to be set aside, while receiving its benefits, cannot be said to work an estoppel against the company. It would be a novel application of the doctrine of estoppel to hold that directors of a corporation may not make a contract for their own benefit, but may yet validate it by failure to proceed against themselves to have it set aside. We do not think the company was estopped to contest the validity of the contract.

There is evidence that the company, by its *zanjero,* undertook to carry the water pumped by the association and distribute it to members of the association, and to some extent this was done up to the time the new board came in. This evidence tends to show that there was a disposition on the part of the company, so far as the then management was concerned, to accept the situation. To some extent, but not entirely, the stockholders seemed to acquiesce, and probably there would have been no objection to a continuance of the arrangement had it not seriously interfered with the rights of stockholders not members of the association. We do not, however, find in the facts any warrant for holding that the company and its stockholders went so far as to estop them from challenging the validity of the contract by which some of the stockholders were obtaining benefits at the expense of others; by which, indeed, a part were receiving water which belonged to all alike.

3. It was alleged in the cross-complaint, as an additional ground for annullment of the contract, that it was impossible for the association to exercise the rights granted it by the contract without violating its terms, injuring the company, and depriving its stockholders of water they were entitled to receive. There was much evidence as to the quantity of water developed by the association, as to the effect of this develop-

ment on the company's previous supply, as to the impractica-
bility, if not impossibility, under existing conditions stated
by the witnesses, of giving this developed water to mem-
bers of the association without affecting injuriously the
right to water of the company's stockholders not mem-
bers of the association.    There was evidence tending
to show that the pumping of water by the association
decreased the flow that the company had theretofore been
receiving.    Expert witnesses testified, in effect, that no
system could be devised that would equitably protect the
stockholders in their rights and at the same time give to
members of the association the water being pumped by it.
This resulted from inherent difficulties in the situation and
methods adopted, which are explained at too great detail for
place in this opinion.    The trial court might well have con-
cluded from the evidence, and it so found, that "if the right
attempted to be given by said contract to develop and pump
water from said cañon should be exercised by the plaintiff
and his associates, or either or any of them, the stockholders
of the defendant would be deprived of a part of the water
to which they were entitled, and which they have been re-
ceiving through the distributing system of the defendant, and
would be irreparably injured by the depreciation of their
water, by reason of such development and diversion of water
by the plaintiff and his associates."    The contract expressly
provided that "the present quantity of water now flowing
and belonging to said first party [the company] is not to be
diminished by such development."    The court also found that
the pumping operations of the association not only "mate-
rially and permanently diminished the water supply flowing
at the time said contract was made," but it also found that it
"rendered it impossible for said company to distribute and
supply the water to which they are entitled to its stockholders,
so long as work is continued and the pumps operated by" the
association.

4. It is contended that the demurrer to the cross-complaint
and objections to evidence in its support should have been
sustained.    The ground of the objection was, that the matters
set up in the cross-complaint formed no part of the contro-
versy between the plaintiff and defendant, and for the further
reason that the cross-complaint made Byram a party defend-

ant to it, who was not a party to the original action.  (Citing
*Lewis* v. *Fox,* 122 Cal. 244; *Savings Bank* v. *Middlekauff,*
113 Cal. 463; *Harrison* v. *McCormick,* 69 Cal. 616, and some
other cases; also Code Civ. Proc., sec. 442.)  New parties may
be brought in upon a cross-complaint, if their presence is
necessary to a full determination of the rights of the parties
then before the court touching the property in litigation be-
tween them.  (*Lewis* v. *Fox,* 122 Cal. 244.)  In *Harrison* v.
*McCormick* the cross-complaint was filed by defendants and
a person not a party, but a stranger, to the action, and, be-
sides, the transaction set forth in the cross-complaint was a
separate and distinct transaction, in no way related to or
dependent upon the transaction or contract set forth in the
original complaint; and for these reasons the new matter was
held insufficient to constitute a cross-complaint.  Here plain-
tiff alleged in his complaint the making of the contract in
question and the right under it to take water, and that the
alleged change in the manner of distributing water by the
company was made to compel the association to surrender
and cancel said contract.  At the trial the contract was read
by plaintiff as the first step in his proof, which, with the notice
of the change by the *zanjero,* plaintiff's response thereto, and
the letter of the president of the company constituted plain-
tiff's case in chief.  Byram, who had signed the contract with
plaintiff, answered the cross-complaint and does not appeal.
The cross-complaint attacked the contract under which plain-
tiff claimed, and it was properly made a subject of the cross-
complaint, and as Byram was a party to the contract he was
properly made a defendant.

5. It is urged that the evidence was insufficient to justify
the finding that the change made in the distribution was not
for the purpose of compelling the association to abandon its
pumping works, but "was a necessary and proper regulation
of the distribution of waters so controlled by it [the company]
to all its consumers, . . . and to avoid supplying to him
[plaintiff] a greater portion of water of said cañon than he
was entitled to receive by virtue of the shares of stock held by
him in the company."

It appears from the evidence that, by judicial decree, the
water of Verdugo Cañon was distributed to owners of prop-

erty in the Rancho San Rafael *pro rata,* according to the number of acres owned by them, and in subscribing to the by-laws of the company the owners represented that they each were "the owners of the same number of shares, or ten thousand thousandths of the water of Verdugo Cañon, and agree that all stock subscribed by us in excess of our interest in the water of the Verdugo Cañon shall be void." These by-laws authorized the company "to make all needful rules and regulations for the division and distribution of water for irrigating and domestic purposes among the stockholders." It was found by the court that for five years plaintiff had been receiving water by a continuous flow of a certain quantity for a certain number of hours each week, which was changed by the company to a certain flow of water during all the hours of each week. The evidence tended to show that this change in the method of distribution was caused at least in part by the pumping operations of the association, and plaintiff was so notified before any change was made, and he was informed that the old division of water should continue "only so long as the pump of the association operating in Verdugo Cañon, in which you are largely interested, is not operated and remains shut down." We do not understand plaintiff to claim any prescriptive right by virtue of five years' user by a particular method of distribution of water to him, and certainly no such right can be predicated of such use. The company had the authority to establish the original method of distribution, and it had the power to change the method. It cannot be presumed that the company acted wantonly or unfairly or from motives of malice towards plaintiff, and there is no evidence that the directors changed the method of water distribution for the purpose alleged in the complaint. But if the directors had such purpose we cannot see that plaintiff can complain, as the contract was void, and might be so treated by the company.

Other findings are challenged as not sustained by the evidence, but so far as they have any bearing upon the material issues in the case there was evidence to support them.

6. Numerous exceptions were taken by plaintiff to the admission and exclusion of testimony. They do not seem to call for extended notice. Several questions were asked the witness

Pierce by plaintiff, with the purpose of showing that the company was short of water at the time the contract was made; that the company was then unable to supply any more water, and was not able to make further developments; that the stockholders were demanding of the company to supply more water, and the like matters. The court rightly excluded the evidence as immaterial. Such a condition of affairs could not justify or validate the illegal act of the directois in making the contract.

Certain minutes of proceedings by the board of directors of the company were offered in evidence by plaintiff for the purpose of showing—1. That a dispute arose between the company and certain other parties as to their rights in the water of the cañon, and that the company employed counsel to defend its rights, but at the time took no step to interfere with the rights being exercised by the association; 2. A resolution authorizing the board to dig a test well to determine the practicability of a pumping plant; and 3. To show that the association had expended money in putting down its well under the contract, and that no tender had been made by the company of this cost to the association. The court ruled these matters to be immaterial and excluded the evidence. The only apparent bearing this evidence could have on the issues, so far as we can see, is upon the estoppel now urged. These minutes relate to a time, as we infer, when the old board, which authorized the contract, was in office; this board would not be likely to institute proceedings against itself for its own illegal act, and its failure to do so, as already suggested, would not prove, or tend to prove, an estoppel against its successors in office, who promptly gave notice that the company would not be bound by the contract. Furthermore, the fact that the company was taking steps to prevent certain persons from diverting the water of the cañon, but did not at the same time proceed against the association, furnished no proof that the company and its stockholders were by their conduct estopped from doing so. Because the company proposed to sink an experimental shaft to find water in no way bore upon the legality or illegality of the contract entered into with plaintiff and Byram. It was the duty and the right of the company to develop water for its stockholders; but it

was neither the duty nor the right of the directors to develop water for their benefit and the benefit of those who joined with them, to the exclusion of stockholders who did not join with them. In doing so they took water that belonged to all alike, and they turned over to themselves the use of the plant free of charge for the purpose of distributing to the few the water belonging to all. As already shown, they had no right to do this.

We have endeavored to dispose of the numerous questions raised by the appeal, so far as they seemed to us to require notice, and, discovering no error in the record, advise that the judgment and order be affirmed.

Gray, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

McFarland, J., Henshaw, J., Lorigan, J.