[Civ. No. 7652. First Appellate District, Division One.—February 4, 1931.]

FRANK BLACKHURST et al., Appellants, v. J. M. WESTERFELD, Administrator, etc., et al., Respondents.

H. A. Massey and Peyton H. Moore for Appellants.

Walter M. Campbell for Respondents.

THE COURT.—The above action was brought by Frank Blackhurst and Harry Blackhurst, individually and as trustees, and by Sarah Jackson and Allen Hemstreet, against the administrator of the estate of Jabez Blackhurst, deceased, and Kate Blackhurst Wilbur, to enforce a trust upon a parcel of land in the city of Santa Monica described as lot Y in block 120 according to certain maps recorded in book 3 at pages 80 and 81, and in book 39 at page 35 of miscellaneous records of Los Angeles County, and other property. All the parties except the administrator are the children of decedent and Sarah Blackhurst, his wife.

On August 14, 1899, said decedent, Frank Blackhurst and Harry Blackhurst, all of whom were then residing in Minnesota, received as trustees under the provisions of the will of William Knapper of Staffordshire, England, the sum of approximately $11,000. This fund was to be held in trust during the life of said Sarah Blackhurst, the income thereof to be paid to her during her lifetime, and upon her death to be divided between her children then living.

The plaintiffs alleged that at the time the trust fund was received decedent had no property of his own; that his cotrustees permitted him to manage and control the fund, invest the same in his own name and apply the income to the use and benefit of said Sarah Blackhurst during her lifetime; that between 1899 and 1902 the trust funds in various amounts were invested in Minnesota, these investments consisting of the purchase of mortgages, building and loan stock, and the loan of a portion of the fund on mortgage security; that in November, 1904, decedent, with his family, came to Santa Monica and brought with him $1500 of the trust fund, leaving the balance invested in Minnesota; that thereafter he collected the latter sum and re-invested the same in California, among these investments being the purchase of the lot above described, for which was paid a total of $2,100; and that all the investments in California were, with the knowledge and consent of his cotrustees, made from the trust fund.

The answer of defendant Kate Blackhurst Wilbur—who will hereinafter be referred to as the respondent—denied that decedent was without funds of his own, and alleged that

when decedent removed to California he owned property in his own right of the value of $15,000. The answer also denied that the several mortgages and the stock described in the complaint were acquired by means of the trust funds, and made the same denial respecting the acquisition of the lot in question.

As special defenses it was alleged that in 1899 plaintiffs relinquished all their interest in the trust property to the decedent; that since September, 1899, and until his death decedent held the same adversely, and that by reason of their conduct plaintiffs were estopped as against respondent to claim any part of the above real property. In addition it was alleged that plaintiffs' claims were barred by the statute of limitations.

The court found against the material allegations of the complaint and in favor of the respondent on her special defenses thereto.

The plaintiffs have appealed from the judgment entered thereon upon the grounds that the findings and conclusions of the trial court are unsupported. Plaintiffs state in their brief that "in view of the fact that all of the property involved in this action, except the property designated as the Santa Monica property, namely, lot Y, block 120, would be distributed equally among the plaintiffs and defendant Kate Wilbur in the event of a distribution by the court in the matter of the estate, as well as in the distribution of the trust estate among the remaindermen, we will devote our attention in the matter of this appeal solely to the questions involving the title and interests of the plaintiffs in the Santa Monica property".

The evidence shows that decedent died testate on January 8, 1914. By his will, which was executed on October 1, 1912, Sarah Blackhurst was given a life estate in all his property; and the remainder, with the exception of the property in dispute and a legacy to respondent, was bequeathed to his children in equal shares. As regards the portion given respondent the provisions of the will so far as material were as follows: "Recognizing the loving care and companionship rendered unto her parents for all of the years she has remained with us without adequate remuneration, and because she is unmarried and unsettled in life at the date of making this will, I do hereby bequeath unto my

daughter, Kate Blackhurst, the sum of $2,000, the same to be paid to her from said residue estate within three months after the death of my said wife; and I do also hereby give unto my said daughter the house and lot, lot Y, block 120, 418 Nevada avenue at Santa Monica, Los Angeles county, California, with all the household furniture contained in said house; to have and to hold the same to her, her heirs, and provided that my said daughter, Kate Blackhurst, shall not at the death of my said wife have been married; but if she shall have been then at any time married, then and in such case said house and lot . . . with all the contents of the house . . . shall be and remain a part of my said residue estate, and distributed as part thereof as hereinafter provided, my daughter, Kate Blackhurst, only receiving the $2,000. . . . '' The will further provided that subject to the life estate of Sarah Blackhurst and the bequest to Kate Blackhurst the whole of the estate should be equally divided between decedent's children.

The appraised value of the estate was $21,551, and of the house and lot in dispute $2,000. After administration thereon the whole estate was on June 25, 1915, distributed to Sarah Blackhurst for her natural life, no disposition of the remainder, however, being made by the decree. Respondent remained single until after the death of Sarah Blackhurst on March 19, 1924, and the present action was filed on February 3, 1926.

The evidence shows that decedent with his wife and all his children, except a daughter now deceased, came to Minnesota from England in 1886. He had acted as one of the executors and trustees of the estate of William Knapper while residing in England. In 1899 this estate was divided, and the portion thereof held in trust for Sarah Blackhurst transferred to decedent and his cotrustees as above mentioned. It was also testified that decedent when he arrived in Minnesota had little, if any, estate. In 1887 he became a Methodist clergyman, and acted as such both in Minnesota and in California, receiving as compensation from the church a salary which varied from $600 to $800 per annum, with the free use of a dwelling. It was shown that decedent and his wife in 1897 and 1898 subscribed for a total of forty shares of stock in the Winnebago Building and Loan Society, upon which they paid monthly the sum of $20; that in 1906

they were repaid by the association on that account the sum of $1693.69, and in 1909 the further sum of $1922.15. 

It also appears that in 1899 decedent purchased from M. S. Bannister three mortgages aggregating $9,650, which were liens upon lands in Faribault County, Minnesota. Two of the mortgages were executed by Sarah J. Doude, one being for $4,000 and the other for $2,150. Both were assigned by Bannister, the mortgagee, "to the trustees of the estate of William Knapper, deceased". On January 29, 1902, new assignments of these mortgages were executed and recorded, reciting that the same were to correct the original assignments; that the mortgages described were sold to Jabez Blackhurst individually; that he paid the consideration therefor, and that neither Harry nor Frank Blackhurst individually or as trustees has any interest therein. These mortgages were subsequently foreclosed by decedent, who purchased the mortgaged property in his own name. Both Harry and Frank Blackhurst were joined as defendants in the action, and both were served with summons and defaulted. The complaints alleged and the court found as to each mortgage the facts as stated in the assignments last mentioned, and that neither Harry nor Frank Blackhurst, individually nor as trustees of the Knapper estate, had any interest in the mortgages.

The parties last named were individually concluded by the judgments (*Koehler* v. *Holt Mfg. Co.*, 146 Cal. 335 [80 Pac. 73]; *Maddux* v. *County Bank, etc.*, 129 Cal. 665 [79 Am. St. Rep. 143, 62 Pac. 264]; Freeman on Judgments, 5th ed., sec. 662), and the facts shown were circumstantially relevant on the question whether decedent owned property separate from that of the trust estate.

This property was sold by the decedent for $8,416.50, payable in installments, and the amount collected by him.

The third mortgage was executed by the Delevan Lodge of Odd Fellows. This was for $3,000, and, like the others, was assigned "to the trustees of the estate of William Knapper, deceased". As in the other instance, however, there was executed and recorded a subsequent assignment, reciting that its purpose was to correct a mistake in the first, namely, a purported assignment of the mortgage to the trustees mentioned. On May 23, 1904, this mortgage was paid to decedent. Plaintiffs alleged that the purchase price

thereof came from the trust fund, and that of the amount paid by the mortgagors there was used by the decedent the sum of $1,000 to pay the first installment of the purchase price of the Santa Monica property.

As stated, the trial court found against these allegations, and also against the allegations that when the Santa Monica property was purchased decedent had no money or other property except that belonging to the trust fund.

Plaintiffs claim that notwithstanding the above findings the evidence shows the allegations to be true.

It appears that from the period previous to the receipt of the trust fund by decedent and his cotrustees the income therefrom had been remitted to Sarah Blackhurst. These amounts were not shown, but it was testified that they exceeded the income from the fund since its transfer. Nor does it appear how much thereof was used for the support of the beneficiary and her family. There was also introduced in evidence a copy of decedent's individual account with the First National Bank of Winnebago, Minnestoa, which account was opened on July 24, 1903, and closed April 11, 1914. The account showed deposits and withdrawals on dates and in amounts corresponding approximately with the payments made and received in the mortgage transactions mentioned above; also letters passed between decedent and the bank, indicating that the first payment on the Santa Monica property was drawn from this account. It was testified by plaintiff Hemstreet that she was told by decedent that this payment came from the trust fund. She also testified that when she was living with her parents in 1892 decedent had no property. Plaintiff Frank Blackhurst testified to the same effect; but it appears that he left home at about the same time as Mrs. Hemstreet; and it is a fair conclusion from the testimony of both that thereafter they had but slight personal knowledge of their father's financial condition.

The evidence tends to show that decedent, following an understanding with his cotrustees, administered the trust in his own name, and apparently mingled trust and individual funds in the same account. The court also found that after the death of her husband and the admission of his will to probate Sarah Blackhurst took possession of the property in dispute, claiming a life estate therein, not under the

trust agreement or any other instrument creating a trust, but under the terms of the will and the decree of distribution entered in the matter of his estate. The fact that she was one of the executrices of the will, procured the entry of the decree, and other circumstances shown, support the latter finding.

The burden of proving by a preponderance of the evidence that the property in question was a part of the trust estate rested upon plaintiffs (*Plass* v. *Plass,* 122 Cal. 3 [54 Pac. 372] ; *Parshall* v. *Parshall,* 56 Cal. App. 548 [205 Pac. 1081] ) ; and it has been held where a trustee after a mingling of funds has withdrawn sums therefrom from time to time it will be presumed that the moneys so withdrawn were from his own portion rather than from moneys held by him in trust (*Elizalde* v. *Elizalde,* 137 Cal. 634 [66 Pac. 369, 70 Pac. 861] ).

The evidence shows that decedent in addition to his clerical duties was an active business man; and the evidence reasonably supports the conclusion that during the long period between his arrival in this country and the payments for the Santa Monica property he had accumulated on his own account sums more than equal to its purchase price. While the court might have inferred from the testimony that the purchase money came from the trust fund, yet the evidence was not of a character which would exclude any other finding thereon. The credibility of the witnesses who were not disinterested, as well as the inferences to be drawn from the circumstantial evidence in the case, were questions for the trial court (Code Civ. Proc., sec. 1847; *Fanning* v. *Green,* 156 Cal. 279 [104 Pac. 308] ; *MacDermot* v. *Hayes,* 175 Cal. 95 [170 Pac. 616] ) ; as was likewise the determination that the property was not subject to the trust if there was any evidence consistent with that conclusion (*Noble* v. *Learned,* 153 Cal. 245 [94 Pac. 1047] ) ; and we cannot say that the finding that the lot was not acquired with the trust funds is unsupported.

As stated, the court also found that since 1899 decedent held the property adversely; that plaintiffs relinquished their interests therein, were estopped by their conduct from claiming the same, and that the action was barred by the statute of limitations. These findings are also attacked; but in view of our conclusion with respect to the findings above

discussed it will be unnecessary to consider the other questions presented upon the appeal.

The judgment is affirmed.