[Civ. No. 6140.   Fourth Dist.   Dec. 3, 1959.]

ZELDA L. JAFFA, Respondent, v. MAX GUTTMAN,
Appellant.

Jos. M. Wapner for Appellant.

Utley & Houck for Respondent.

MUSSELL, J.—This action arose out of an oral agreement between the parties to jointly purchase a ranch in Imperial Valley. The action was commenced in January, 1955, by the filing of a complaint to quiet title to the property. De-

fendant filed an answer and cross-complaint seeking a decree quieting his title, an accounting, and damages. Plaintiff filed an amended complaint alleging three causes of action: (1) For specific performance of a contract for the joint purchase of the property; (2) imposition of a constructive trust thereon; and (3) for imposition of a resulting trust on said property. In a supplement to her amended complaint plaintiff alleged that the ranch involved had been lost to the parties by the foreclosure of a trust deed executed by defendant at the time of purchase of the property and the prayer was for the following relief: (1) That the contract be declared rescinded for failure of consideration and that the $17,000 plaintiff had advanced to defendant be restored to her; (2) that an equitable lien be imposed in plaintiff's favor upon the excess funds of $6,482.48, realized from the foreclosure sale; (3) that an oral compromise agreement relating to other ranch property be canceled; and (4) that plaintiff recover the taxes and ranch improvement expenses which she had paid. The action was tried on the issues joined by plaintiff's amended complaint, her supplement thereto, and defendant's answer to those pleadings. The trial court rendered judgment in favor of plaintiff and that defendant take nothing by reason of his cross-complaint. Defendant appeals from the judgment.

## FACTS

Defendant, who was the owner of the Bar BW Ranch, situate in Imperial County, the property herein involved, had transferred his interest in said property and was attempting to buy it back. In January or February, 1953, he told plaintiff that after March the trust deed on the ranch would be foreclosed and proposed to plaintiff that the two of them acquire a joint interest in the property. Defendant represented that the property could be purchased for the sum of $55,000, subject to real property taxes of $5,000, making a total of $60,000. After lengthy negotiations, plaintiff agreed to sell her home in order to raise the necessary funds for a down payment and an oral agreement was entered into between the parties in August, 1953, whereby it was agreed that plaintiff would supply the $20,000 needed for the down payment, defendant would give her a credit of $10,000 as a compromise settlement of a controversy involving another ranch; that he would pay the delinquent taxes due in the sum of $5,000 and assume the $35,000 encumbrance required to complete the transaction. In this manner each party would

contribute $30,000 to the acquisition cost of $60,000 and each would acquire a one-half interest in said Bar BW ranch. It was further agreed that title would be taken in plaintiff's name alone until defendant had paid his share of the purchase price and plaintiff would manage the ranch, and the operations thereof would be on a joint venture basis.

On June 21, 1954, plaintiff deposited the sum of $17,000 with defendant's attorney with the direction that the money be paid to the sellers of the property and it was understood and agreed at that time that defendant would assume, in addition to the other undertaking by him, $3,000 for various improvements plaintiff had made on the premises to be purchased. In July, 1954, plaintiff was furnished with a copy of an agreement between defendant and the Town Investment Company which required $20,000 down payment. Defendant told her this company had agreed to accept $17,000 in cash and his note for $3,000 and asked her to authorize his attorney to pay over the $17,000 and stated that "he would then sign the agreement and we would get title to the ranch." On July 15, 1954, plaintiff gave defendant's attorney her written authorization to transmit her funds to the Town Investment Company. This document also specified that title should be taken in the names of "Zelda L. Jaffa, and Max Guttman, or the latter's nominee." On July 29, 1954, defendant's attorney transmitted the funds and on July 30, 1954, he wrote Mrs. Jaffa to that effect, stating also that:

"I . . . now have in my file an agreement concerning the property, substantially in the form, a copy of which was sent to you a few days ago with these changes:

"Receipt of $17,000 instead of $20,000.00.

"$3,000 is to be paid on or before December 1, 1954.

"In all other respects, the agreement is in the same form as copy in your possession."

At the time plaintiff deposited the $17,000 on June 21, 1954, to make the down payment, she requested that a written agreement be prepared embodying all of the conditions of the oral agreement between the parties. On September 27, 1954, she received from defendant's attorney a letter purporting to outline the agreement for the purchase of the ranch. The agreement was erroneous in that it provided for her a one-half interest in the ranch subject to the $35,000 encumbrance and delinquent taxes, failed to identify specifically the debt to be cancelled, and obligated her to pay the $3,000 payment due December 1, 1954. This agreement

was contrary to all previous understandings and arrangements, since it would involve the payment on plaintiff's part of $20,000, the down payment, the assumption of $20,000 more, which would be $40,000, and a credit of $10,000, which would total $50,000, and defendant's part of the obligation would be $20,000. She advised defendant's attorney that the agreement was not in accordance with the terms of the original oral agreement. She discussed these discrepancies with defendant and he stated that he would have his attorney redraft the agreement. Between September 27, 1954, and January 26, 1955, plaintiff, on many occasions, attempted to get the oral agreement correctly reduced to writing but was unable to do so. In the meantime, she continued to live at the ranch and to manage and improve it.

On November 24, 1954, defendant, without consulting plaintiff, consummated the purchase agreement with Town Investment Company by taking title to the ranch in his name alone and executing a trust deed and note for $40,700, instead of the $35,000, thus making the purchase price, exclusive of taxes, $57,700, instead of $55,000. This was done without plaintiff's knowledge or consent and she did not learn about it until some time in January, 1955. Plaintiff then sought independent legal advice and a conference was held between the parties and their attorneys. Defendant there contended that plaintiff would have to pay half of the new encumbrance and this action was filed four days later.

While this litigation was pending neither plaintiff nor defendant was able to make the payments due under the $40,700 trust deed and as a result of this default, foreclosure sale was held and the ranch was lost to the parties. Plaintiff continued to live at the ranch until April 10, 1957, at which time the property was sold at a foreclosure sale for a price which exceeded the costs of sale and the amounts due under the trust deed by $6,482.48.

### FINDINGS

The trial court found that plaintiff and defendant entered into an oral agreement in August, 1953, to acquire joint interest in certain real property situate in Imperial County for the purchase price of $60,000; that the contribution of plaintiff would be $17,000, cash, $3,000 credit for money expended on said ranch and a $10,000 credit on an obligation owing to plaintiff from defendant arising out of a previous real estate transaction, known as the Tamarask Ranch; that the balance of the purchase price was to be assumed and

paid by defendant; and that the oral agreement provided that when said $17,000 was paid, title to the property involved would be taken and held jointly by plaintiff and defendant; that plaintiff deposited $17,000 with defendant's attorney, which was thereafter used by defendant as the down payment on said real property; that defendant falsely and fraudulently misappropriated said $17,000 by applying it on the purchase price of said real property and thereafter took title to said property in his own name, exclusively, without the knowledge or consent of plaintiff and with the specific intent of deceiving plaintiff and depriving her of her title to or possession of said real property; that said real property was thereafter foreclosed, and there now exists an excess over the amount to satisfy the deed of trust under foreclosure sale in the sum of $6,482.48; that defendant has never returned to plaintiff the $17,000 obtained from her and misappropriated by defendant nor has he returned to plaintiff the $10,000 representing a compromise indebtedness due and owing from defendant to plaintiff.

The trial court concluded that plaintiff was entitled to relief and that both a resulting and constructive trust existed in her favor.

### JUDGMENT

Judgment was rendered imposing a resulting and constructive trust upon the proceeds of the sale of the real property involved up to the sum of $17,000, together with interest at the rate of 7 per cent per annum from and after August 1, 1953, in the sum of $6,042.68; rescinding the oral contract, the subject of the instant action; restoring to plaintiff such legal rights and credits as previously existed in her favor arising out of the Tamarask transaction; restoring to plaintiff all legal claims theretofore existing against defendant, including such rights as she may have in an existing action against defendant arising out of a suit on a $5,000 promissory note in Superior Court Case Number 29598; and denying defendant any recovery on his cross-complaint.

Appellant first claims that the decision and judgment are against the law. He argues that the remedies of rescission and an action for damages are inconsistent and that a completed or effective rescission terminates the contract and bars an action for fraud; that upon the breach of a contract a party thereto may treat it as rescinded and if he has advanced money on it, bring an action for its recovery; or he may treat the contract as still in force and maintain an action for damages

for breach, but he cannot do both. Citing *Evans* v. *Rancho Royale Hotel Co.,* 114 Cal.App.2d 503, 507 [250 P.2d 283]. Appellant then states that plaintiff affirmed the oral contract by claiming a one-half interest in the property by taking and retaining possession and exercising dominion over it for a period of over three years and by treating the property as her own and, now that it was lost through foreclosure, she may not come into a court of equity and claim that she has been defrauded.

While it is true that in her amended complaint plaintiff did not seek rescission but sought to have her interest in the ranch recognized and enforced by equitable decree, she did by her supplement to the amended complaint seek rescission of the contract and restoration of the $17,000 advanced by her to defendant. Since the parties lost the ranch by foreclosure of the trust deed, the court was not able to grant plaintiff the usual relief awarded in resulting and constructive trust cases and as an alternative gave plaintiff a monetary judgment for the $17,000 she had advanced and imposed an equitable lien or trust in her favor on the excess proceeds received at the foreclosure sale to secure payment thereof.

Where, as here, a change has been brought about since the commencement of the action, knowledge of which is judicially before the court, brought about by appropriate pleading, its decree should be addressed to the rights existing at the time of the determination of the action. The trial court's judgment herein was based on the circumstances existing at the time it was rendered and not on the facts as they existed at the time of the commencement of the action. In equity, relief is administered in accordance with the facts as they exist at the close of the litigation. (39 Cal.Jur.2d, Pleading, § 225, p. 328.) As is said in *Buxbom* v. *Smith,* 23 Cal.2d 535, 543 [145 P.2d 305]:

". . . (t)he matter of pleading becomes unimportant when a case is fairly tried upon the merits and under circumstances which indicate that nothing in the pleadings misled the unsuccessful litigant to his injury. [Citations.] Consistent with these liberal principles is the mandate of section 4½ of article VI of the state Constitution: 'No judgment shall be set aside . . . for any error as to any matter of pleading . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' " See also 39 Cal.Jur.2d, Pleading, § 10, p. 19.

In 18 California Jurisprudence 2d, Equity, section 59, pages 243-244, it is said that the court is not confined, in the rendition of its decrees, to the strict legal rights of the parties; it can grant to a plaintiff relief that is as varied and diversified as the methods employed by the defendant to produce the grievance complained of, and that when a court has assumed jurisdiction of the parties and subject matter of the controversy, its decree will be comprehensive and complete in order to terminate, if possible, further litigation in the matter.

In *Klinker* v. *Klinker*, 132 Cal.App.2d 687, 694 [283 P.2d 83], it was held that a court of equity can mold its decrees to suit the exigencies of the case; that where equity has acquired jurisdiction for one purpose, it will retain that jurisdiction to the final adjustment of all differences between the parties arising from the causes of action alleged and that where a court has taken jurisdiction of a suit in equity it may determine all legal and equitable issues in order to completely dispose of the matters in controversy.

There is substantial evidence in the record, considered in the light of the foregoing authorities, to support the judgment herein.

Appellant claims that the finding that defendant falsely and fraudulently misappropriated said $17,000 by applying it on the purchase price of the Bar BW Ranch and thereafter took title to said property in his own name is not supported by the evidence. We are not in accord with this argument.

In *Primm* v. *Primm*, 46 Cal.2d 690, 693-694 [299 P.2d 231], it is said:

"When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact. [Citations.]

"When two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. [Citations.]"

Appellant claims that the court erroneously allowed interest on the sum of $17,000 from August, 1953. However, the record shows that on that date plaintiff entered into escrow for the sale of her home in order to obtain funds for the down payment on the ranch. Moreover, this is an equitable action in which the court was empowered to adjust the rights and

liabilities of the parties on an equitable basis.

 Appellant claims that the court erred in not making a finding on the issue of a joint venture. Where, as here, the evidence is sufficient to support the judgment, no prejudicial error resulted from failure to find on said issue. (*Pacific Finance Corp.* v. *Crane,* 131 Cal.App.2d 399 [280 P.2d 502].)

Finally, it is argued that the court erred in denying appellant's motion to strike the supplement to the original complaint. This argument is likewise without merit. It is no objection to a supplemental complaint that different relief is asked for. (*Jacob* v. *Lorenz,* 98 Cal. 332, 338 [33 P. 119].) In the instant case the record shows that the foreclosure sale affected the rights asserted by plaintiff in her amended complaint and under such circumstances she properly sought a monetary judgment against appellant secured in part by a lien or trust on the surplus realized in the foreclosure proceedings.

Judgment affirmed.

Griffin, P. J., and Shepard, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 27, 1960.