[Civ. No. 29906.   Second Dist., Div. Three.   Mar. 6, 1967.]

JACOB G. EFRON et al., Plaintiffs and Respondents, v. PAUL KALMANOVITZ et al., Defendants and Appellants.

James D. Arditto, J. Albert Hutchinson and Daniel B. Condon for Defendants and Appellants.

Horowitz & Howard and Sydney J. Dunitz for Plaintiffs and Respondents.

NOURSE, J. pro tem.*—This is a derivative suit by minority stockholders challenging the propriety of the sale of certain assets of Maier Brewing Company, a corporation, hereinafter to be referred to as Maier, to S & P Company, a corporation, hereinafter to be referred to as S & P.[1] The case is before this court on appeal for the second time.[2] At the original trial of the action the court found that the contract under which S & P acquired the assets of Maier was fair to Maier and to its minority stockholders. Upon appeal this court reversed the judgment of the trial court holding *inter alia* that the burden was upon the defendants, the dominant

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

[1] After the sale the corporations changed their names; we, however, have used their original names throughout this opinion.

[2] *Efron* v. *Kalmanovitz,* 226 Cal.App.2d 546 [38 Cal.Rptr. 148].

stockholders of Maier, to show that the contract was fair; that while the defendants had shown that the price to be paid for the assets was adequate the evidence failed to show that the terms of payment of the contract price were fair, judged as of the time the offer was accepted, and that the action of the defendant Kalmanovitz, the dominant shareholder of Maier, in procuring the sale of Maier's assets to S & P which was wholly owned or controlled by him was, in the absence "of more substantial justification for his action than" was shown by the evidence before the court, a constructive fraud upon Maier and its minority stockholders.[3]

At the second trial defendants did produce further evidence bearing upon the reasons for the necessity of the sale of the brewery by Maier including evidence that major improvements and alterations of the brewery properties were required which would require large amounts of money; that it lacked credit to borrow the funds necessary; that it had practically exhausted its ability to claim depreciation of those assets so as to produce "cash flow" which would enable it to use its earnings to make the alterations and repairs necessary to conduct the brewery business on a profitable basis and that the directors of Maier were all of the opinion that the contract was a fair one. The evidence further showed that between June 29, 1958, and June 30, 1964, S & P paid to Maier on account of the contract price of $7,761,193.49 the sum of $2,100,000 of which amount approximately $268,000 constituted interest on the balance due on the contract; that S & P was financially able, at the date of trial, to fulfill the contract according to its terms.

The question as to whether the terms of payment fixed by the contract rendered the contract unfair was one of fact to be determined by the trial court and that court having determined that the contract was unfair this court cannot substitute its judgment for that of the trial court. (*Armstrong Manors* v. *Burris,* 193 Cal.App.2d 447, 460 [14 Cal. Rptr. 338], cited in *Efron* v. *Kalmanovitz,* 226 Cal.App.2d 546. 559 [38 Cal.Rptr. 148].)

The trial court not only found that the contract was unfair but further found that it was not made in "*good*

[3]For a statement of the basic facts and a summary of the evidence before the trial court at both the first and second trials we refer to the statements of those facts and that evidence made in the opinion in the first trial. (*Efron* v. *Kalmanovitz,* 226 Cal.App.2d 546, 548-556 [38 Cal. Rptr. 148].)

*faith*" and did not have the "*earmarks of an arm's length transaction.*" Appellants attack the italicized portion of the findings as not supported by the evidence. As we have held that the finding that the contract was unfair is supported by the evidence it follows that whether either of the findings attacked is supported by the evidence is immaterial because the finding that the contract was unfair supports the conclusion that it operates as a constructive fraud. (*American National Bank* v. *Donnellan*, 170 Cal. 9, 15 [148 P. 188, Ann.Cas. 1917C 744]; *Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427, 429 [45 P.2d 183]; *Overton* v. *Vita-Food Corp.*, 94 Cal.App.2d 367, 370 [210 P.2d 757]; *Petersen* v. *Murphy*, 59 Cal.App.2d 528, 532 [139 P.2d 49].)

█ " 'The phrase "good faith" in common usage has a well-defined and generally understood meaning, being ordinarily used to describe that state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, means being faithful to one's duty or obligation. (*People* v. *Nunn*, 46 Cal.2d 460, 468 [296 P.2d 813].)' " (*People* v. *Bowman*, 156 Cal.App.2d 784, 794 [320 P.2d 70].) █ In the present case there is no evidence that Kalmanovitz did not intend to carry out the contract or cause S & P Corporation, his wholly owned corporation, to carry it out. There is no evidence that Kalmanovitz had any intention to defraud the corporation or the minority stockholders, but he as a director and majority stockholder was under the obligation to exercise his power with a view to the interests of the corporation and not to enter into a contract by which he would acquire most of the assets of the corporation unless it was just and reasonable as to the corporation at the time it was entered into. It having been found upon substantial evidence that the contract entered into was because of the terms of payment not just and reasonable, that is, that it was unfair to the corporation, it follows that the contract was in that sense and that sense only not entered into in good faith.

█ The finding that the transaction did not carry the "earmarks of an arm's length transaction" is a finding beyond the issues before the court. Kalmanovitz controlled both corporations and was, in effect, dealing with himself. It is self evident that "arm's length" cannot be the test of the validity of such a transaction for one cannot deal at arm's length with himself. Such contracts if fair are valid. (Corp. Code, § 820.) The trial court and counsel for the respondent are apparently of the opinion that this court in its opinion in

the prior appeal in this case held that the transaction between the corporation and its dominant stockholders must be at arm's length. This court did not so hold although such a statement is made in an authority quoted by the court.

■ Appellants attack the finding that the contract was unfair as merely a legal conclusion. The only issue on the liability phase of the action which was open for trial at the second trial of this action was the question whether the contract was fair to Maier and its stockholders. That was the ultimate fact. The court was not required to find the probative facts upon which it based its finding of that ultimate fact. (*Santens* v. *Santens,* 180 Cal.App.2d 809, 816 [4 Cal.Rptr. 635]; *Machado* v. *Machado,* 188 Cal.App.2d 141, 148 [10 Cal.Rptr. 347]; *De Vrahnos* v. *George,* 203 Cal.App.2d 210 [21 Cal.Rptr. 481].)

In *De Vrahnos* v. *George, supra,* the court was considering the finding that a trustee " 'has not violated any duty which he may have owed.' " Answering the attack on this finding that it was not the finding of the ultimate fact the court stated (pp. 221, 222) :

"The general rule is as stated in *Lewetzow* v. *Sapiro,* 188 Cal.App.2d 841, 845 [11 Cal.Rptr. 126] : 'It is axiomatic that a finding of ultimate fact embraces the necessary probative facts to sustain it. Inclusion of evidentiary facts would add nothing of value and would needlessly embellish the structure of the findings with rococo details.'

". . . . . . . . . . . . .

". . . The ultimate fact at issue is whether respondent violated his duties as a 'trustee,' and the trial court specifically found on this issue. (See *Stack* v. *Welder,* 137 Cal.App. 647 [31 P.2d 426], where the court held that *the ultimate fact to be determined is the trustee's good faith.*)" (Italics supplied.)

Further the court did make specific findings that S & P was owned and controlled by Kalmanovitz; that Kalmanovitz was through the ownership in his own name or in the name of corporations wholly owned and controlled by him the dominant stockholder in Maier; that he dominated and controlled the board of directors of Maier; that they acted and were controlled in their acceptance of the offer of S & P by Kalmanovitz; the court further incorporated in its findings the contract between Maier and S & P which this court has held, in the former appeal, to be on its face unfair to Maier; the

court therefore did find all of the basic probative facts necessary to its finding of the ultimate fact of unfairness.

▉ Appellants assert that the plaintiffs are estopped to attack the contract of sale. Estoppel was not pleaded in the answers of the defendants nor was the question of estoppel raised in or presented to the trial court. In order for there to be an estoppel there must have been some proof of an act by the minority stockholders which caused the defendants to act to their detriment or some proof of acquiescence by the plaintiffs in defendants' operations under the contract. (*Parker* v. *Funk*, 185 Cal. 347, 352-353 [197 P. 83]; *Goodell* v. *Verdugo Canon Water Co.*, 138 Cal. 308, 314-315 [71 P. 354]; Code Civ. Proc., § 1962, subd. 3.) It suffices to say that appellants fail to point out any act by the plaintiffs which induced the defendants to act to their detriment or any acquiescence that would permit an inference that they were affirming the contract. To the contrary, every action taken by the defendants was taken with the knowledge of and in the face of the facts alleged in the complaint in this action which was filed within 31 days after the contract had been entered into and more than two months before its consummation. Whatever action defendants took they took at their own risk and not through any inducement by acts or acquiescence of the plaintiffs.

▉▉ By its findings and judgment the trial court in effect divided the assets held by S & P as of the date of the findings into four categories:

(a) Assets owned by S & P prior to June 29, 1958 (the date of the contract).

(b) The real property contracted to be sold by Maier to S & P under the contract in question.

(c) Certain real property acquired by S & P after the contract was entered into and up to the date of the judgment.

(d) All other property, tangible and intangible, of every nature whatsoever and wheresoever situated owned or held by S & P.

The court found and its judgment decreed that all of the assets in categories (b), (c) and (d) were held in trust for Maier. The court made no finding as to the rents, issues or profits realized by S & P from its use of the assets acquired by it from Maier, that is, those hereinbefore referred to as falling in category (b) plus the personal property and intangibles described in the contract of sale.

The court did not find that the properties in categories (c) and (d) were the product or fruits received by S & P from the use of the properties received by it from Maier under the contract. It only found these properties were held in trust by S & P for Maier. This finding is not a finding of fact but a conclusion of law. ▮ The impressment of a trust upon property held by a person who has obtained it through fraud, either actual or constructive, is a remedy which a court of equity may grant in order to provide restitution to the transferor and prevent unjust enrichment of the transferee. The trust which is imposed does not arise because it was intentionally created but is imposed as a remedy. (*Bainbridge* v. *Stoner,* 16 Cal.2d 423, 428-429 [106 P.2d 423]; Rest., Restitution, § 160, p. 641; 23 Cal.Jur.2d, Fraud & Deceit, § 52, pp. 130-131; Bogert, Trusts & Trustees (2d ed. 1960) § 471.) ▮ In the case at bar the proof and finding that the assets which we have placed in category (b) were obtained by S & P through constructive fraud and that it retained those assets supported the conclusion that they were held in trust for Maier and the judgment of the court here that they were so held. ▮ In order, however, to draw the conclusion and to decree that the assets in categories (c) and (d) were held in trust by S & P for Maier it was necessary for the court to find[4] what the product (profit) received by S & P from the use of assets obtained by it from Maier was and that that product went into, that is, was the source of the assets in categories (c) and (d). (*Walsh* v. *Majors,* 4 Cal.2d 384, 398-399 [49 P.2d 598]; *Mitchell* v. *Dunn,* 211 Cal. 129, 136 [294 P.2d 386]; *Blackhurst* v. *Westerfeld,* 111 Cal.App. 548, 554 [295 P. 863]; *Holland* v. *Bank of Italy etc. Assn.,* 115 Cal. App. 472 [1 P.2d 1031].) The evidence shows that at the time the contract was entered into S & P was engaged in the business of buying, selling and holding for investment real property, leaseholds and other business enterprises; that after the contract was entered into it continued its business and also operated the brewery. Without any finding by the trial court as to the profits realized by S & P in the operation of the brewery and without any finding of the trial court that

---

[4]The defendant made written objections to the court's findings and written requests for special findings and irrespective of the question of whether the findings made by the trial court was one of ultimate fact or a conclusion of law we cannot assume in support of the judgment that the court determined the facts as to which findings were requested in favor of the respondents. (*Garber* v. *City of Los Angeles,* 226 Cal.App. 2d 349, 354-356 [38 Cal.Rptr. 157]; Code Civ. Proc., §§ 632, 634.)

these profits were invested by S & P in the assets upon which the court imposed a trust, the judgment imposing the trust cannot be sustained.

■ Maier is entitled to a judgment in some form which would require S & P to make restitution to Maier for the product obtained by S & P from the use of the properties which it fraudulently acquired, but whether the remedy provided should be in the form of the imposition of a trust or the imposition of an equitable lien or a money judgment or a combination of these remedies depends, as we have said, on first, proof and finding that there was a product and the amount thereof, second, upon tracing this product into a *fund* or specific properties either in whole or in part and a finding that the product has been so traced. If the product cannot be traced a money judgment is the only remedy available. If, as to a specific asset, it is shown and found that it was the product of a commingling of the property fraudulently acquired and the wrongdoers' own money or property then the innocent party is entitled to an equitable lien upon that asset. (Rest., Restitution, §§ 160, 202, 215; 23 Cal.Jur.2d, Fraud & Deceit, § 52, p. 130.) The findings here are wholly lacking in establishing any facts upon which it can be determined what remedy the plaintiffs were entitled to. Upon a retrial the court will be in a position to judge what remedy will best do equity between the parties. ■ Courts of equity in making their decrees look to the facts as they exist at the time of the decree and mold their decrees to adjust the rights of all and settle all controversies between the parties. (*Swan* v. *Talbot,* 152 Cal. 142, 147 [94 P. 238, 17 L.R.A. N.S. 1066]; *Jaffa* v. *Guttman,* 175 Cal.App.2d 790, 797 [346 P.2d 876].)

■ At the conclusion of the evidence upon the liability aspects of this case the trial court made a minute order reading in part as follows: ''Having read the briefs and studied the record, the court now proposes to order judgment for the plaintiffs as prayed, to order an accounting, and to fix attorney fees.'' The trial proceeded thereafter but no accounting was ordered or had. The court did receive into evidence plaintiffs' Exhibit 30 which is an advocate's presentation based upon the books of S & P and used for the purpose of showing the product or benefit obtained by S & P from the use of the original assets and of tracing that product into the assets and categories (c) and (d) upon which the trust is imposed. It was not and did not purport to be a full

accounting. It did not trace or purport to trace the cash flow realized from the use of the brewery assets into any specific properties although it did purport to show that during the year in which any specific property was acquired there was sufficient cash flow from the brewery assets to enable it to make such purchase. Without going into the exhibit in detail we may call attention to the fact that the accountant who prepared Exhibit 30 testified that Exhibit 30 was not prepared in accordance with correct accounting principles and that it was not prepared to show the net income of the two corporations; that as to the asset designated in Exhibit 30 as the Arcadia Shopping Center, the down payment on the property was made by the defendant Kalmanovitz and one of his wholly owned corporations plus money supplied by S & P and that later Kalmanovitz and his wholly owned corporation were repaid but that there was no evidence as to the source of the funds from which he was repaid; that as to the Macy Street asset, upon which a trust is impressed, the down payment was made by S & P but that the witness' only knowledge as to the source of the funds used is that it came from S & P's bank account without any showing as to whether that bank account consisted of commingled funds or solely the funds derived from the profits of the operation of the brewery assets; as to the Fontana and Studio Village Shopping Centers $200,000 of the down payment was supplied by defendant Kalmanovitz and one of his wholly owned corporations but there was no evidence as to their having been repaid. While it is undisputed that Maier received from S & P at the time the transaction was consummated the sum of $100,000 and that this sum came from S & P's original funds, Exhibit 30 fails to give S & P credit for $100,000 nor do the findings or judgment allow S & P credit for it. It was undisputed that S & P paid to Maier the further sum of $2,000,000. The findings did not deal with or mention this sum and we find nothing in the record which shows the source of the funds used to make that payment. We draw attention to the facts just recited to illustrate the necessity for a full and complete accounting and tracing of funds.

This being a proceeding in equity it was the duty of the court to do equity between the parties and to render a judgment that would return to Maier everything that had been obtained from it by fraud together with the product thereof, but which would also give to S & P that which belonged to it including any payment to Maier under the contract, other

than those made from the earnings of the brewery assets. (*People* ex rel. *Mosk* v. *National Research Co.*, 201 Cal.App.2d 765, 775-776 [20 Cal.Rptr. 516]; Bogert, Trusts & Trustees (2d ed. 1960) § 472, pp. 21-25.)

Appellants complain of the form of the judgment in that it did not expressly adjudge a rescission of the contract. There is no merit in this contention. A judgment compelling restitution by S & P to Maier necessarily involves a setting aside of the contract without any necessity for a formal rescission. The effect of the judgment is to rescind the contract.

The trial court awarded the attorneys for the plaintiffs a fee in the amount of $700,000 and directed that judgment be entered in their favor against Maier to be paid out of the brewery assets. Inasmuch as the trial court failed to make any findings as to the product of the original brewery assets or as to the value of that product or any finding as to the benefit received by Maier from the efforts of plaintiffs' attorneys we are not in a position to pass upon the question as to whether it abused its discretion in fixing the amount of the fees awarded. As the judgment must be reversed we leave it to the trial court after it has determined the benefits and other facts essential to the fixing of fees to award attorneys' fees in such amount as it finds will constitute *reasonable compensation* for services rendered.

The judgment is reversed with directions to the trial court to order an accounting and upon that accounting to make findings as to (1) the earnings or profits derived by S & P from the properties acquired by it from Maier, (2) what properties were acquired by S & P through use of the earnings or profits derived from the use of the brewery assets and the amount of said earnings or profits invested in any such asset acquired, (3) the amount as to which S & P is entitled to reimbursement or credit and (4) the reasonable compensation to which the attorneys for the plaintiffs are entitled, and to enter judgment for the plaintiffs in accordance with the law and the facts found.

Ford, P. J., and Moss, J., concurred.

A petition for a rehearing was denied March 29, 1967, and the petitions of the appellants and the respondents for a hearing by the Supreme Court were denied May 4, 1967.