[Civ. No. 25555. Second Dist., Div. Four. May 2, 1962.]

MARIE DE VRAHNOS et al., Plaintiffs and Appellants, v. JAMES P. GEORGE et al., Defendants and Respondents.

Gilbert Fall, Partridge, O'Connell, Partridge & Fall and John G. Fall for Plaintiffs and Appellants.

Musick, Peeler & Garrett, Jesse R. O'Malley and Frederick B. Warder, Jr., for Defendants and Respondents.

BALTHIS, J.—This case involves competing equities arising out of the financial stresses and hazards of a family restaurant operation. The De Vrahnoses (plaintiffs), being in dire financial straits, sought help from one recognized as a relative (defendant James P. George) who put in substantial sums, first to pay off the existing creditors of the De Vrahnos restaurant and then, also at the De Vrahnos' request, additional amounts to keep the restaurant operating in a new corporate form. The sums advanced by the defendants George (sometimes hereinafter referred to in the singular) were secured by a deed given by the De Vrahnos covering the real property where the restaurant was located. After the failure of the restaurant operation by the corporation the question presented is whether defendants are secured for all moneys advanced for the restaurant as operated both by the De Vrahnoses and the corporate enterprise or only those used to pay off the existing creditors of the De Vrahnoses. Plaintiffs

De Vrahnos appeal from a judgment in favor of defendants George.

In order to understand the issues, it is necessary to review the facts in some detail. Marie and Pierre De Vrahnos for 20 years prior to 1956 were the owners of Pierre's Restaurant in San Marino, California. Prior to 1954, when Pierre became ill and terminated his active interest in the restaurant, the operation was successful. Pierre's wife, Marie, operated the restaurant until August 1955. Thereafter the couple moved to Santa Monica and in January 1956 the De Vrahnoses went to Lourdes, France, where Pierre died on December 1, 1956, with Marie returning to the United States in early 1957.

During the period from August 1955 to approximately December 1, 1956, the restaurant was left in the hands of Eleana De Vrahnos, daughter of Marie and Pierre, Eleana being 21 years old at the time.

After Pierre fell ill and terminated all connections with the management of the restaurant, business had fallen off considerably and by the middle of 1956 the family and restaurant were in serious financial straits. The Internal Revenue Service had threatened to close the restaurant unless $2,000 was paid forthwith. Eleana's checks to numerous creditors were being returned by the bank due to insufficient funds. Creditors of the restaurant were attaching the property and there were threats of foreclosure by the holder of the first deed of trust. P. Basil Lambros, attorney for the De Vrahnoses, who handled their transactions during this period, testified that the De Vrahnoses were on the point of losing their entire investment in the property and that he considered the property "a lost cause."

This was the factual setting when defendant James P. George (hereafter referred to as George) was brought into the picture. George, Marie De Vrahnos' step-uncle, was a successful businessman. By letter from Marie to Eleana from Lourdes on July 9, 1956, Eleana was instructed to contact "Uncle Jim" (George) for financial assistance. Eleana acted as instructed and after George obtained information as to the plight of Pierre's Restaurant and the De Vrahnos family, he arranged for a $2,000 loan, cosigning a note with Eleana to take care of the obligations to the Internal Revenue Service. Following this, there were further visits by George from his home in San Francisco with Eleana in Los Angeles and cor-

respondence followed from Eleana to George setting forth the obligations of the family and the restaurant.

In September 1956 George had several more conversations with Eleana wherein they reached an understanding as to what help he could give the De Vrahnoses and under what terms.

A general power of attorney to Eleana was executed by Marie and Pierre in Lourdes on September 24, 1956, and sent to Eleana.

On October 4, 1956, George dictated a letter to Eleana to be sent to her parents in Lourdes outlining the status of the business and his opinion at that time as to what would be the best course to take. George also stated: ''Frankly, Marie, I am sorry I was called into this. While I can do my best, I am only human and not a mastermind that can guarantee success.'' In summary, George's letter proposed to ''stabilize'' the business pursuant to the De Vrahnos' urgent request; that nothing should be done unless Marie agreed; that a first deed of trust loan of $30,000 would be obtained to pay off the old first deed of trust and other secured creditors; that a second deed of trust for $15,000 and $20,000 would have to be negotiated to refinance unsecured obligations and for alterations and new equipment; that the proposed plan would provide for Marie and Pierre a fair rental and part of the profits; and that he would work out further details ''as best as I can see my way clear to do so.''

Marie's approval to the plan as outlined was contained in a telegram dated October 11, 1956, which stated: ''Angel do whatever you think best. All in your hands. Letter following. Love. Marie.''

On October 16, 1956, a deed conveying the real property in question to James P. George and Blanchette George was executed by Eleana under her general power of attorney pursuant to arrangements made by P. Basil Lambros, the De Vrahnos' attorney. This deed was intended by all parties to be a security device only and the trial court so found.

George proceeded to give a first deed of trust for $30,000 to the Bank of America in San Francisco, the proceeds of which were used to clear the secured creditors and he himself advanced $10,328.73 to clear most of the unsecured creditors (the outstanding unsecured creditors amounted to over $17,000). In spite of the refinancing, Pierre's Restaurant closed in the last week of October 1956.

The next phase of the operation concerned the incorpora-

tion of the restaurant as Riviera Restaurant, Inc. Marie instructed her daughter, Eleana, to request assistance of George and also gave instructions for the formation of the corporation which later operated the restaurant as follows: "I hope that U. Jim [George] has started proceedings for a corporation—the property will be safe for the time being." A similar request is made in the letter dated October 10, 1956, from Marie to George, in which she stated: "Then a corp. must be formed and 1st class operation put into the place."

Before George undertook to incorporate the restaurant and advance further funds for extensive remodeling and operations, he requested Eleana, under her general power of attorney, to execute a formal letter based on a "revision in thinking" since the letter of October 4, 1956, written to Marie in Lourdes, France.

This letter agreement of November 8, 1956, which supplemented and modified the agreement of October 4, 1956, is important in that it sets forth the exact basis upon which George was to be secured for all funds advanced for the De Vrahnos and for the new corporate enterprise. The agreement is set forth in the footnote.[1]

---

[1]Los Angeles, California
November 8, 1956

James P. George
703 Market Street
San Francisco 3

Dear Sir:

You are the record title holder by deed recorded October 30, 1956, Book 52718, Page 270, Official Records Los Angeles County, of

LOT 2 and the easterly 40 feet of LOT 1 measured along the northerly line of Huntington Drive, of Tract No. 7496 in the City of San Marino, as per map recorded in Book 120, Page 37 of Maps.

This letter will further authorize you to execute a lease on the building located on the above described land including everything thereon and therein to yourself and/or associates or anyone of your choosing for a period of up to but not exceeding fifteen (15) years from January 1, 1957, for a rental of not less than five hundred dollars ($500.00) per month or five percent (5%) of sales whichever is the higher.

This will also further authorize you to sell the real property above described with improvements thereon anytime within one (1) year from date hereof provided, however, that in your opinion the restaurant business to be conducted by lessees on said premises is not a profitable and paying business.

Should you so elect to do, you are authorized to first reimburse yourself from the proceeds of said sale for all moneys advanced by you for remodeling said premises, purchase of equipment, or for any moneys advanced in connection with the operation of the new business for a period of twelve (12) months from November 8, 1956.

You are also authorized to reimburse yourself for the payment of bills, taxes, debts and/or obligations of any kind, nature, or character for or

It is likewise important to note that as to both of these agreements, Eleana De Vrahnos, who operated under a power of attorney, concluded all the transactions which are now complained of only after consultation with her attorney, P. Basil Lambros. This included the letter agreement of November 8, under which George was secured for his advances to the De Vrahnoses, and to the Riviera Restaurant, Inc. While the letter agreement of November 8 was signed by Eleana as attorney in fact for Marie and Pierre De Vrahnos, it was later modified (with respect to certain matters here immaterial) and ratified by an instrument signed by both Marie (then widow of Pierre) and Eleana in August of 1957.

P. Basil Lambros, the De Vrahnoses' attorney, testified: ". . . Eleana and her mother both did tell me on more than one occasion that they didn't want Uncle Jim to lose any money, and my understanding of that was they wanted him to be underwritten, and, of course, how far they could underwrite him, I don't know. I knew they were anxious for him to have the property as security. Now, how far that was to go, I just can't properly say. *I know that she didn't want him to lose a cent, that I am certain of. They were anxious about that.*" (Emphasis added.)

On October 16, 1956, Mr. Lambros, as attorney for the De Vrahnoses, arranged for the deeding of the property to

---

in connection with Pierres Restaurant, Pierre de Vrahnos, Marie de Vrahnos, or any of them. After all such obligations and liens have been realized by you, you are authorized to pay the balance, if any, to Marie de Vrahnos. You are further authorized to sell or trade in all equipment and/or stock of any kind, nature, or character now on the premises at 2295 Huntington Drive, San Marino, California, for forty-five hundred dollars ($4,500.00) for which amount we agree to accept and do by these presents accept an interest equivalent to nineteen percent (19%) in the new restaurant now being organized.

The intent of this letter and its authorization is to hold you harmless from any and all obligations of any kind arising or that may arise, whether financial or otherwise, out of Pierres Restaurant, the premises and real property herein described, or the new business now being organized.

Very truly yours,

PIERRE DE VRAHNOS

/s/ Pierre de Vrahnos

By _____ Eleana de Vrahnos

His attorney in fact

MARIE DE VRAHNOS

/s/ Marie de Vrahnos

By _____ Eleana de Vrahnos

Her attorney in fact

George. He testified as follows with respect to the purpose of the transaction:

"Q. Did Miss De Vrahnos say anything about Mr. George being secured for moneys he advanced to pay off debts of the De Vrahnos family? A. Oh, yes; oh, sure.

"Q. That was part of these conversations? A. Oh, yes. The money that he had advanced to take care of the De Vrahnos' obligations, the money that he had advanced in the interim before we had organized the Riviera Restaurant Corporation, and the moneys that he was going to have to advance to the Riviera Restaurant Corporation until such time as the business developed to the point where they could get their property back."

Articles of incorporation were prepared by Mr. Lambros and were filed with the Secretary of State on November 15, 1956. George was the president of the Riviera Restaurant, Inc., and Joanna Lambros (the sister of Mr. Lambros, the De Vrahnos' attorney) was the secretary. Eleana De Vrahnos was made a director and was on the payroll of the Riviera Corporation for a short period of time.

On December 1, 1956, James and Blanchette George executed a lease to the Riviera corporation at a rental of $500 a month, or 5 per cent of the gross, whichever was greater. By December 20, 1956, George had put an additional $21,000 into the Riviera corporation.

By March 1957 it was apparent that the restaurant operation would not be successful. George apprised Marie De Vrahnos of the situation *and suggested that the property be liquidated so that he could recover his investment and there would remain an equity in the De Vrahnos family.* However, Marie De Vrahnos prevailed upon George not to do so, and on March 19, 1957, wrote a letter to George which includes the following two paragraphs:

"Some time ago I wrote to you from France to the effect *that anything you did in connection with the property or business had my approval.*

"I wish to and do hereby certify that you have my permission and approval to sell the property at 2295 Huntington Drive, San Marino, and to first reimburse yourself for money you have to date paid out in connection with Pierre's Fine Foods or Riviera Restaurant, and the balance of proceeds from said sale if any to be paid to me. *It is my understanding that you contemplate lending Riviera Restaurant additional money,*

*but did not wish to endanger any equity that I may have in the real property without this written approval from me.*

"With all my love.

/s/ Marie De Vrahnos"

(Italics added.)

In a letter to George, dated July 22, 1957, Marie expressed her understanding that George was secured in his advances to the DeVrahnos family and to the restaurant when she stated: "I only hope and pray, Uncle Jim, that you come out of this the winner. *There is no earthly reason that you should lose anything.* . . . I realized what would happen to the business, and I knew at the time what the picture would be if I let my heart rule rather than my head—so I was not unaware of the unpleasant picture to be. Then for you to come into such a picture and do what you have done—I shall be everlastingly grateful." (Italics added.)

The restaurant was closed in early December 1957. Thereafter, when George refused to advance further funds and attempted to secure the cooperation of the De Vrahnos family in liquidating the property to recover his investment, the instant suit was filed on November 7, 1958.

The amended complaint filed by the De Vrahnoses, as plaintiffs, is an action for declaratory relief and to quiet title to real property. The amended cross-complaint filed by defendant and cross-complainant George on February 6, 1959, seeks to have the deed dated October 16, 1956, declared a mortgage and foreclosed.

The trial court, sitting without a jury, rendered judgment for defendant and cross-complainant George, holding that George held the real property as security for advances in the amount of $133,534.86, being the total advanced to the De Vrahnos family and to the Riviera restaurant, together with simple interest thereon. The De Vrahnoses, Marie and Eleana (sometimes referred to as plaintiffs) appeal from the judgment.

The principal contention of plaintiffs on appeal is that the trial court failed to make findings on material issues dealing with presumptions raised by the confidential relationship existing between the parties and which presumptions are provided for in section 2235, Civil Code. This section reads: "All transactions between a trustee and his beneficiary during the existence of the trust, or while the influence acquired by the trustee remains, by which he obtains any advantage from his beneficiary, are presumed to be entered into by the

latter without sufficient consideration, and under undue influence.''

Plaintiffs concede that defendant George holds the deed (and the property covered thereby) as security for the advances made to pay off the De Vrahnoses' creditors; as to the balance of the sums advanced by George to carry on the restaurant as reorganized in the corporate venture, plaintiffs contend that George cannot hold the real property as security therefor in that he received over 40 per cent of the stock in the corporation and was acting for himself to promote his own personal interests. Plaintiffs argue that because of the confidential relationship found by the court, defendant George did not sustain the burden of proof in establishing that the letter agreement of November 8, 1956, was fair, supported by sufficient consideration and that undue influence was absent.

While the trial court did find there was a confidential relationship between the De Vrahnoses and George (which was a counterfinding proposed by plaintiffs), it also made additional specific findings about the deed, the agreements between the parties and the performance of any duties owed to plaintiffs by George.

To have the complete picture all of these findings must be considered together. There are three findings which are material and important, as follows:

## "FINDING II

"In July and August, 1956, ELEANA DE VRAHNOS had discussions with JAMES P. GEORGE, a relative by marriage, concerning the operation of said PIERRE'S RESTAURANT. Following these discussions, *ELEANA DE VRAHNOS requested, and JAMES P. GEORGE agreed, to assist in stabilizing the business of PIERRE'S RESTAURANT, and MARIE DE VRAHNOS, PIERRE DE VRAHNOS and ELEANA DE VRAHNOS gave carte blanche to JAMES P. GEORGE to stabilize the business and a confidential relationship arose between PIERRE, MARIE and ELEANA DE VRAHNOS on one hand and JAMES P. GEORGE on the other.*

## "FINDING VI

"Under the terms of said agreement, the real property described in Paragraph IV hereof was deeded by PIERRE DE VRAHNOS and MARIE DE VRAHNOS to defendants, JAMES P. GEORGE and BLANCHETTE GEORGE, as security for loans made by said defendants to plaintiffs and

to PIERRE DE VRAHNOS, and as security for monies to be advanced by said defendants for the use and benefit of PIERRE and MARIE DE VRAHNOS as follows: to remodel the restaurant building located on said real property; to purchase restaurant equipment; and to finance the operation of a restaurant business by a corporation which was formed to operate a restaurant on said real property. *Said agreement was executed by plaintiff, ELEANA DE VRAHNOS, as Attorney in Fact of PIERRE DE VRAHNOS and MARIE DE VRAHNOS, with full knowledge of the legal effect thereof, and after consultation with the attorney for plaintiffs.* The deed, which is Exhibit 19 herein, is a security instrument and a mortgage given by PIERRE DE VRAHNOS and MARIE DE VRAHNOS by and through ELEANA DE VRAHNOS as their Attorney in Fact, in order to secure defendants, JAMES P. GEORGE and BLANCHETTE GEORGE, for said monies advanced to said plaintiffs and to said corporation. Thereafter, and on or about August 18, 1957, *MARIE DE VRAHNOS and ELEANA DE VRAHNOS executed the instrument entitled "Modification of Agreement of November 8, 1956"* (Exhibit 22) *with full knowledge of the legal effect of said instrument."*

"FINDING VIII

*"JAMES P. GEORGE has not violated any duty which he may have owed to the plaintiffs in his dealings which are the subject of this action."* (Italics added.)

Plaintiffs requested additional special findings as to the agreement dated November 8, 1956, negativing undue influence, that defendant George obtained any advantage over the De Vrahnoses, and that George did not deal with the property for his own profit. The trial court refused to make these special findings, holding the findings as made were sufficient to cover all material issues and to state the ultimate facts.

Plaintiffs argue that sections 632 and 634, Code of Civil Procedure, as amended in 1959, are applicable here in requiring a determination of "all issues of fact" and in preventing any inference that the trial court found in favor of defendants upon issues not specifically found after request by plaintiffs. Section 634 as amended provides that if upon appeal "it appears that the court has not made findings as to all facts necessary to support the judgment" the appellate court "shall not infer that the trial court found in favor of the prevailing party on such issue if it appears that the party

attacking the judgment made a written request for a specific finding on such issue.''

The question here presented is whether the trial court failed to make ''findings as to all facts necessary to support the judgment.''

The general rule is as stated in *Lewetzow* v. *Sapiro,* 188 Cal.App.2d 841, 845 [11 Cal.Rptr. 126] : ''It is axiomatic that a finding of ultimate fact embraces the necessary probative facts to sustain it. Inclusion of evidentiary facts would add nothing of value and would needlessly embellish the structure of the findings with rococo details.''

In *Mashon* v. *Haddock,* 190 Cal.App.2d 151 [11 Cal. Rptr. 865], it was held that section 634, Code of Civil Procedure, as amended in 1959, did not change the normal rules on appeal when sufficiency of findings are challenged. The court stated (p. 167) : ''When findings are questioned, it is the duty of an appellate court to compare them with all the evidence in the case, to consider them as a whole, and to construe them liberally in support of the judgment.''

A reading of the findings made by the court in the case at bar indicates the court fully considered the effect and validity of the agreements in controversy and resolved all issues raised by the amended complaint and by the pretrial order in favor of George. The court's failure to find specifically on each of the probative fact questions raised by the De Vrahnoses was not error.

In the instant case while the court found that a confidential relationship arose between the parties, it likewise found specifically that the agreements, including the November 8, 1956, writing, were executed by the De Vrahnoses ''with full knowledge of the legal effect thereof'' and after ''consultation with the attorney for plaintiffs''; the court further specifically found that defendant George ''has not violated any duty which he may have owed to the plaintiffs.''

The specific findings mentioned above completely negative any presumptions raised by section 2235, Civil Code, even if that section be considered applicable.

In view of the finding that George did not violate any duty which he may have owed to plaintiffs the specific findings requested by plaintiffs negativing undue influence and that ''no advantage was taken'' by George were unnecessary. The ultimate fact at issue is whether respondent violated his duties as a ''trustee,'' and the trial court specifically

found on this issue. (See *Stack* v. *Welder*, 137 Cal.App. 647 [31 P.2d 426], where the court held that the ultimate fact to be determined is the trustee's good faith.)

In *Malinow* v. *Dorenbaum*, 51 Cal.App.2d 645 [125 P.2d 554], plaintiff sued the executor of an estate to impress a trust upon certain property held in the name of defendant's decedent. The complaint alleged that a fiduciary relationship of trust and confidence had existed between plaintiff and the decedent, and that plaintiff had transferred the property to decedent with an oral understanding that she would hold it in trust for him and return it upon demand, and that she had failed to do so and instead had bequeathed the property to a third person. The trial court found simply that the property had been conveyed in trust but that plaintiff had acquiesced in the bequest thereof by the trustee to a third person. Judgment was entered for defendant. It appeared that the trial court made no special finding that the trustee had not gained an advantage through fraud and undue influence, and plaintiff appealed on this issue. The Court of Appeals held that the trial court's finding, that the beneficiary had acquiesced in the trustee's act, was sufficient in itself to support the judgment, even though there had apparently been no special finding that the trustee had not gained an advantage through fraud or undue influence. The court further applied the doctrine of "acquiescence by the beneficiary" (see Civ. Code, § 2230, subd. 1), saying: ". . . it is well settled that where a beneficiary has consented to a course of conduct by the trustee, a rule permitting the cestui to attack the transaction later on would, as the court said in *Colton* v. *Stanford*, 82 Cal. 351, 378 [23 P. 16], 'convert a rule intended to prevent fraud into one creating an incentive to and a cover of fraud.' " (51 Cal.App.2d 645, 652.)

 The presumptions of section 2235, Civil Code, were not necessarily applicable to the instant case. As previously pointed out, the De Vrahnoses initiated the entire transaction of George coming in with financial assistance and taking over the restaurant operations; further, the De Vrahnoses had independent advice. Under these facts the case comes within the exception set forth in subdivision 1, section 2230, Civil Code, relating to prohibited transactions by the trustee. A trustee is not prohibited from taking part in the transaction "[w]hen the beneficiary, having capacity to contract, with a full knowledge of the motives of the trustee, and of all other facts concerning the transaction which might affect his own

decision, and without the use of any influence on the part of the trustee, permits him to do so.''

 Where a beneficiary has consented to a course of conduct and transactions by the trustee, he cannot later attack such transactions (*Malinow* v. *Dorenbaum*, 51 Cal.App.2d 645, 652 [125 P.2d 554] ; *Robison* v. *Hanley*, 136 Cal.App.2d 820, 825-826 [289 P.2d 560]). In the instant case the trial court found that the De Vrahnoses had full knowledge of the legal effect of the deed and the security agreements after consultation with their own attorney.

Plaintiffs' argument that the transactions in question were absent consideration is untenable. The instrument reduced to writing the earlier oral agreement between George and Eleana. The substance of this agreement was that, if George would advance monies to the De Vrahnoses for their personal debts and to reactivate the restaurant in corporate form, George would be secured in the property which otherwise would have been lost to the De Vrahnoses. George organized and continued financial advances to the corporation at the De Vrahnoses' request and while they knew and agreed to their participation in the venture. These acts constituted adequate consideration (see *MacDonald* v. *Rosenfeld*, 83 Cal. App.2d 221 [188 P.2d 519]).

The De Vrahnoses also argue that the security device given George was beyond the scope of Eleana's power of attorney. If this were true it is clear that Marie acknowledged the giving of this deed and the execution of the agreement of November 8, 1956, and in fact ratified its execution when in August 1957 she signed a document entitled ''Modification of Agreement of November 8, 1956.'' This again was after George expressed the desire to sell the property and to recover his investment and also protect the De Vrahnoses' investment in the property.

The further argument is made by plaintiffs that the letter agreement of November 8, 1956, giving them a 19 per cent interest in the new venture was a violation of the Corporate Securities Act. This issue was not raised by the pleadings or by the pretrial order. It was not presented to the trial court except in one of the requests made by plaintiffs for a special finding.

 In our opinion whether or not the agreement of November 8 was in violation of the securities act was not actually or properly an issue in the trial of the case. The suit here is not to enforce or make effective any agreement pertaining to

the issuance of a "security" within the meaning of that statute. The De Vrahnoses sued to quiet title to certain real property and for an accounting by George as "trustee." George cross-complained to foreclose the mortgage (in the form of a deed) on the property. Plaintiffs themselves introduced the letter agreement of November 8 into evidence with no reservation or comment upon its alleged invalidity because of the Corporate Securities Act. The primary issue in the instant case was the determination of what funds advanced by George were secured by such mortgage. The letter agreement is material on this issue and was properly before the court.

Furthermore, plaintiffs, having requested George to make the advances at the time of their financial crisis and having accepted all the benefits of such financial assistance, having initiated and promoted the organization of the corporate enterprise in order to "hang on," having their own attorney (Lambros) active in its organization and Eleana having participated in all the original proceedings of the corporation, are not in a position to argue that the agreement is void because it is in violation of the securities act.

As pointed out, the agreement was material and explanatory as to the amounts secured by the mortgage and any illegality because of the reference to the 19 per cent interest to be owned by the De Vrahnoses was entirely a collateral issue in this proceeding.

The final contention of the De Vrahnoses is that the evidence does not support the findings. An examination of the record shows that there is substantial evidence to support the findings and the judgment. The contention is without merit.

The judgment is affirmed.

Burke, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied May 18, 1962, and appellants' petition for a hearing by the Supreme Court was denied June 27, 1962.