**Ivan MEYER, Plaintiff and Appellant,**

v.

**McCORMICK, INCORPORATED, a North Dakota Corporation, John L. McCormick, Thomas D. McCormick, and Steve McCormick, Defendants and Appellees.**

Civ. No. 890030.

Supreme Court of North Dakota.

Aug. 28, 1989.

Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, for plaintiff and appellant; argued by Jack G. Marcil.

Dosland, Dosland, Nordhougen, Lillehaug & Johnson, PA, Moorhead, for defendants and appellees; argued by J.P. Dosland. Appearance by Pamela J. Hermes of Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd.

MESCHKE, Justice.

Ivan Meyer appealed from a judgment granting specific enforcement of a settlement agreement to McCormick, Inc., John L. McCormick, Thomas D. McCormick, and Steve McCormick (hereinafter "McCormicks") and dismissing Meyer's action against McCormicks. We affirm.

In 1980, White Properties, Inc. (White) purchased all of the stock in Meyer Construction Company (MCC) from Meyer, the Meyer Construction Company Employees' Stock Ownership Plan and Trust (the Employees' Trust), and another shareholder. White issued promissory notes in payment for the stock. Later, White assigned its interest in the purchase agreement to McCormicks. McCormicks then substituted their promissory notes for $3,088,530.40 payable to Meyer (the Meyer note) and for $979,452.79 payable "to the order of Ivan Meyer, segregated account of Meyer Construction Company Employee Stock Ownership Plan and Trust" (the trust note).

In 1986, Meyer sued McCormicks to collect the delinquent Meyer note, but did not sue on the trust note. McCormicks answered and counterclaimed, asserting various claims, defenses and set-offs. Meyer and McCormicks sought to settle all claims. Robert Bakkum, a vice president of a subsidiary of McCormick, Inc., negotiated for McCormicks. Meyer and McCormicks were each represented by legal counsel.

The settlement negotiations culminated on August 22, 1986, with MCC's appointment of Meyer as the trustee of his own segregated account in the Employees'

Trust and with the execution of a settlement agreement. Soon, a dispute arose about the effect of the settlement agreement. Meyer claimed that McCormicks were required to pay the trust note in cash. McCormicks refused, contending that the agreement, which settled all claims between them, did not so require.

Meyer moved to interpret or set aside the settlement agreement. McCormicks moved for its specific enforcement. The trial court denied Meyer's motion and granted McCormicks' motion. The judgment enforced the settlement agreement and dismissed Meyer's action.

On appeal, Meyer contended that the trial court erred. He urged that we either reform the settlement agreement to require the trust note paid in cash or that we set aside the settlement and remand for trial on the merits. Meyer contended that Bakkum, who was also a trustee of the Employees' Trust, breached fiduciary duties by negotiating a settlement against Meyer's interest and by failing to disclose to Meyer that McCormicks did not intend to pay the trust note in cash. Meyer also contended that there was a mutual mistake. Meyer's argument centered on Bakkum's conduct in negotiating for McCormicks while he continued as a trustee of the Employees' Trust which managed Meyer's separate segregated account.

The trial court determined the relevant facts as follows:

"11. That [Meyer] was aware of Bakkum's employment status and his negotiations on behalf of [McCormicks].

"12. That the said Bakkum, as trustee, offered no advice to the beneficiaries of the Meyer Trust.

"13. That [Meyer] did not rely upon any representation of Bakkum or [McCormicks] or their other agents as to the effect of the negotiations or Settlement Agreement upon the trust assets, but relied solely upon his agents, accountant and attorney.

    \*    \*    \*    \*    \*    \*

"17. That there is adequate consideration in the Settlement Agreement for the transfers required thereunder, including the satisfaction of the promissory note in the sum of $979,452.79."

The trial court concluded:

"1. That the Settlement Agreement of August 22, 1986, is unambiguous and requires both the promissory note to Meyer in the sum of $3,088,530.04 and the promissory note to the Trust in the sum of $979,452.79 to be delivered to [McCormicks] and marked paid in full.

"2. That there is not a mutual mistake of fact, as [Meyer's] mistake was not common to both sides.

"3. That the consent of [Meyer] to the Settlement Agreement was not obtained through undue influence, actual or constructive fraud.

"4. That [McCormicks] did not obtain advantage over the beneficiaries of the Meyer Trust by misrepresentation, concealment, threat or adverse pressure by their agent Robert Bakkum."

We conclude that these findings were not clearly erroneous under NDRCivP 52(a) and that the conclusions were not mistaken.

■ As opposing litigants, Meyer and McCormicks had adverse interests. In negotiating on behalf of McCormicks, Bakkum was advancing an interest adverse to Meyer. Bakkum was a trustee of the Employees' Trust and Meyer was one of its beneficiaries. Section 59–01–11 of the North Dakota Century Code restricts a trustee's actions concerning the trust:

"Neither a trustee nor any of his agents may take part in any transaction concerning the trust in which he or anyone for whom he acts as agent has an interest, present or contingent, adverse to that of his beneficiary, except as follows:

"1. When the beneficiary, having capacity to contract, with a full knowledge of the motives of the trustee and of all other facts concerning the transaction which might affect his own decision and without the use of any influence on the part of the trustee, permits him to do so; ..."

Thus, a trustee may not participate in a transaction with the trust which is adverse to a beneficiary, unless the beneficiary permits him to do so with "full knowledge."

In our view, Meyer, with "full knowledge of the motives of the trustee," permitted Bakkum to negotiate for McCormicks. "Where a beneficiary has consented to a course of conduct and transactions by the trustee, he cannot later attack such transactions." *De Vrahnos v. George*, 203 Cal. App.2d 210, 21 Cal.Rptr. 481, 489 (1962). Meyer knew that Bakkum was negotiating for McCormicks and Meyer knew their interests were adverse to Meyer's. Meyer specifically testified that he did not rely on Bakkum to interpret the settlement agreement; rather, Meyer relied on his attorney. As the trial court determined, Meyer did not rely on Bakkum in the negotiations, in interpreting the effect of the proposed settlement agreement, or in deciding to sign the settlement. Meyer, as a beneficiary, permitted Bakkum as his trustee to negotiate for an interest adverse to Meyer's with "full knowledge" and "without the use of any influence on the part of the trustee."

A trust or fiduciary relationship may cause " 'the trusting party to relax the care and vigilance he would ordinarily exercise.' " *The Land Office Co. v. Clapp–Thomssen Co.*, 442 N.W.2d 401, 406 (N.D. 1989) [quoting *Asleson v. West Branch Land Co.*, 311 N.W.2d 533, 539 (N.D. 1981)]. But that kind of relationship does not "ordinarily exist when businesspersons deal with each other at arm's-length." *The Land Office Co. v. Clapp–Thomssen Co.*, *supra*, 442 N.W.2d at 406. Here, Meyer did not "relax the care and vigilance he would ordinarily exercise" in reliance on a fiduciary relationship with Bakkum in negotiating the settlement. Meyer and McCormicks were businessmen who dealt with each other at arm's length through their negotiating agents and attorneys. The trial court determined that Meyer did not rely upon Bakkum. The evidence supported that finding and it is not clearly erroneous.

■ If we assume that Bakkum had a duty to disclose to Meyer that McCormicks did not intend to pay the trust note in cash, that intention was disclosed in the written settlement agreement which Meyer executed individually and as trustee of his own segregated account in the Employees' Trust. That agreement spelled out all intended asset transfers:

"1. McCormick agrees to transfer to Meyer and Trust the real property known as the Dickinson Energy Center except for that portion of the property that has been sold.... There is presently due and owing on said property past due real estate taxes together with interest, penalties, and special assessments. Said property is being transferred to Meyer and Trust subject to said taxes, penalty, and special assessments.

"2. McCormick shall transfer to Meyer and Trust the sum of $215,000.

"3. The amount due MCC for work done on portions of the Dickinson Energy Center Project, including any interest and penalty, shall be treated as paid in full.

"4. MCC and McCormick shall transfer and convey to Meyer and Trust the following items of used equipment, free and clear of all liens and encumbrances: [then describing several items of equipment, including hot oil and fuel tanks, a loader, a motor grader, a paver, and three dump trucks].

\*　　\*　　\*　　\*　　\*　　\*

"6. Meyer agrees to and does hereby transfer all of his right, title and interest in NPN Rental partnership to McCormick. McCormick agrees to accept the transfer of said partnership interest and to assume the liabilities which Meyer had as a partner of NPN Rental....

"7. MCC is the owner, subject to loans, of two insurance policies on the life of Meyer.... MCC agrees to transfer these policies to Meyer with premiums paid on said policies through December 31, 1986....

"8. Meyer shall deliver to McCormick the original promissory note he received from it in the sum of $3,088,530.40 and mark said note paid in full. Trust shall deliver to McCormick the original promis-

sory note it holds in the original sum $979,452.79 and mark said note paid in full. MCC shall deliver to Meyer his original promissory note in the original sum of $596,357.00 and mark said note paid in full...."

Paragraph 10 of the agreement concluded the settlement:

"The parties shall execute a joint release releasing each of them from any and all obligations under or pursuant to any of the prior agreements between them including those specifically hereinbefore mentioned, written contracts not specifically mentioned and any and all oral agreements between any of the parties. It is the intention of this agreement and the release that there shall be no further obligations on the part of Meyer or Trust to McCormick, MCC, John McCormick, Steve McCormick, Thomas McCormick or any other related company and *there shall be no further obligations on the part of John McCormick, Tom McCormick, Steve McCormick, MCC, McCormick, Inc. or any of their related companies to Meyer or Trust except as may be specifically set forth in this agreement.* A separate joint release shall be prepared, executed, and placed in escrow with Ward Kirby to be delivered to each of the parties at the same time as the delivery of the original promissory notes." (Our emphasis.)

These provisions of the settlement agreement listed all of the asset transfers contemplated and recognized "no further obligations." The only cash payment mentioned in the settlement agreement was the sum of $215,000 for both Meyer and the Employees' Trust. *See* paragraph numbered 2. Thus, the agreement clearly disclosed that McCormicks did not intend to separately pay the trust note in cash.

A comparable decision illustrates the point. In *Midland Nat'l Bank v. Perranoski*, 299 N.W.2d 404, 413 (Minn.1980), investors in a partnership contended that an accountant breached a fiduciary duty "to disclose to them the material fact that Stone House was not a limited partnership." The court held that the investors "did not place their trust in [the account-

ant, as] indicated by the fact that each consulted his own attorney with regard to the transaction." Further:

"They cannot have been unaware of the importance of reading a legally binding document before signing it. The Stone House partnership agreement disclosed the extent of a partner's liability for debts of the partnership, and [the accountant] was entitled to expect that [the investors] would read the partnership agreement. He therefore did not breach his duty to disclose the material fact that Stone House was not a limited partnership." *Id.,* at 413.

Similarly, Bakkum did not breach any duty to disclose to Meyer that McCormicks did not intend to pay the amount due on the trust note in cash. That disclosure was clearly made in the settlement agreement, which showed all of the contemplated asset transfers between the parties.

■ The trial court determined "[t]hat there is not a mutual mistake of fact, as the Plaintiff's mistake was not common to both sides." We agree. For a mutual mistake to justify reformation of an agreement, "it must be shown that, at the time of the execution of the agreement ... both parties intended to say something different from what was said in the instrument." *Cokins v. Frandsen,* 141 N.W.2d 796, 799 (N.D.1966). The evidence showed that McCormicks did not intend to pay cash for the trust note and amply supported the trial court's determination.

The judgment is affirmed.

ERICKSTAD, C.J., GIERKE and VANDE WALLE, JJ., and VERNON R. PEDERSON, Surrogate Justice, concur.

VERNON R. PEDERSON, Surrogate Justice, sitting in place of LEVINE, J., disqualified.