Filed 10/16/13  Estate of Wizel

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ESTATE OF LYDIA WIZEL, Deceased.<br>_____<br><br>A. EDWARD EZOR,<br><br>      Plaintiff and Appellant,<br><br>      v.<br><br>ROBERT BROWN et al., as Conservator<br>of the Person and Estate of Jill Wizel,<br><br>      Defendants and Respondents. | B237990<br><br>(Los Angeles County<br>Super. Ct. No. BP101210)<br><br><br>ORDER MODIFYING OPINION<br>AND DENYING PETITION<br>FOR REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on September 16, 2013, be modified as follows:

On page 21, paragraph 2, line 10, please delete "We cannot consider this argument or alleged new evidence for the first time on appeal.  (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1138.)" and replace with:

However, a final judgment cannot be attacked based on intrinsic fraud. (*Philippine Export & Foreign Loan Guarantee Corp. v. Chuidian* (1990) 218 Cal.App.3d 1058, 1091 ["intrinsic fraud . . . that fraud which weakens the opponent's case, as for example by perjury on the witness stand . . . is not a ground to reopen a judgment. [Citations.]"].)

The petition for rehearing is denied.

[There is no change in the judgment.]

Filed 9/16/13 (unmodified version)
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ESTATE OF LYDIA WIZEL, Deceased. _____ <br><br> A. EDWARD EZOR, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> ROBERT BROWN et al., as Conservator of the Person and Estate of Jill Wizel, <br><br> Defendants and Respondents. | B237990 <br><br> (Los Angeles County Super. Ct. No. BP101210) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Reva G. Goetz, Judge. Affirmed.

Dennis V. Greene for Plaintiff and Appellant.

Law Office of Jeffrey C. Squire and Jeffrey C. Squire for Respondent, Robert Brown.

Morris & Associates and James G. Morris for Ellie Page as Conservator for Respondent, Jill Wizel.

In this case, the probate court found that a trustee of a decedent's trust (Trust), Edward Ezor (Ezor), breached his duties as a trustee. Ezor acted as co-trustee with one of the beneficiaries, Jill Wizel (Wizel) to administer the Lydia Wizel Trust for the benefit of Robert Brown (Brown) and Wizel. The court concluded that Ezor breached his duties by delaying the administration of the Trust, paying himself and his attorney excessive fees, refusing to make any distributions to Brown, failing to investigate Wizel's competence to serve as a trustee, failing to pay Wizel's medical insurance premiums, and opposing the beneficiaries' objections to his account without reasonable cause and in bad faith.

The probate court removed Ezor and surcharged him the excessive fees paid to him and his attorney, the loss incurred by Brown due to Ezor's failure to divide the Trust assets, and the loss incurred by Wizel due to her lapse of medical insurance. The probate court also surcharged Ezor the attorney fees related to his opposition to the objections to the account pursuant to Probate Code section 17211, subdivision (b).

Ezor appeals. He contends that the probate court erred in: (1) admitting testimony by two of the experts; (2) excluding evidence of Brown's unclean hands; (3) finding that Wizel was incompetent to serve as trustee; (4) applying a preponderance of evidence standard of proof to the issue of undue influence; (5) finding that Ezor was personally liable for damages; (6) finding that Brown and Wizel had contested his account; and (7) calculating damages. He further contends that the probate court should have held that Wizel was precluded from seeking relief because she accepted fees and

2

distributions from the Trust, and that he was not directly responsible for the lapse of Wizel's medical insurance.

We find no abuse of discretion in the probate court's order. Furthermore, the record supports the probate court's factual findings and those findings in turn support the surcharges imposed on Ezor. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Lydia Wizel Trust*

The trial court proceedings as evidenced by the limited record before the court were as follows.[1] The Lydia Wizel Trust (Trust) was dated June 12, 1991 and amended on August 3, 1993. The Trust provided that the settlor's principal residence be allocated to a separate sub-trust for Wizel and that certain specific gifts be distributed. The Trust further provided that the balance of the estate be divided in half between Lydia Wizel's children, Wizel and Brown, and allocated to separate sub-trusts for the benefit of each of them. Ezor and Wizel were named in the Trust as successor trustees.

Lydia Wizel died on March 27, 2006. The Trust contained the following assets for distribution into sub-trusts for the benefit of Wizel and Brown: a condominium

---

[1] Appellant's index selectively represents the record to the court, leaving out numerous court orders. The orders the appellant does provide are truncated such that multiple pages are often missing from those orders. It is the appellant's burden to provide an adequate record on appeal. (*Amato v. Mercury Casualty Co.* (1993) 18 Cal.App.4th 1784, 1794.) To the extent the record is inadequate, we make all reasonable inferences in favor of the judgment. (*Ibid.*)

(Condo) with an equity of $100,000, $12,948 in cash, and $437,671 in mutual funds less $65,000 in specific gifts to be distributed to third parties. Approximately a week after Lydia's death, Brown notified Ezor that he was named as a successor trustee. Wizel was represented in her capacity as co-trustee by counsel Neil Solarz (Solarz).

On December 9, 2006, Wizel was hospitalized for over two weeks in the psychiatric unit at Brotman Memorial Hospital with a diagnosis of psychosis. Brown notified Ezor about Wizel's hospitalization and expressed concerns about Wizel's competence to serve as co-trustee. His concerns included Wizel's abuse of controlled substances, alcohol and illegal drugs, and her gambling losses. Brown tried to persuade Ezor to file a petition to have Wizel removed as a co-trustee. Ezor told Brown to gather declarations from people who were knowledgeable about Wizel's competence for Ezor to use in a petition to have Wizel removed as co-trustee.

At Ezor's request, Brown submitted a declaration and solicited declarations from four other individuals under penalty of perjury. Brown wrote that Wizel had lost over $100,000 gambling. A friend of Wizel's wrote that Wizel was concerned people were after her and could "barely take care of herself." The father of Wizel's son wrote that when Wizel was admitted to the hospital she was " 'delusional, talking to herself, paranoid saying people were coming to get her,' " and that in the two weeks after her release, Wizel was not bathing or dressing in fresh clothes. Wizel's aunt wrote that in November 2006 Wizel exhibited disoriented behavior, staring into space and laughing for no reason. A relative of Wizel's wrote that, since the summer of 2006, Wizel's speech was confused and it was difficult to make sense of her statements.

4

Ezor's counsel discussed Wizel's capacity to act as trustee with Solarz.  On December 27, 2006, Solarz wrote to Ezor's counsel stating that "[a]fter extensive conversations with [Wizel's] doctors and interviews with [Wizel], and in light of [Wizel's] release from Brotman Medical Center, we have concluded that [Wizel] does not lack capacity to continue to act as Co-Trustee of the Trust. . . .  [W]e will resist any attempt to remove [Wizel] as Co-Trustee of the Trust. . . . "

Later that month, Ezor wrote to Solarz expressing concerns about Wizel's fitness to act as a co-trustee.  Ezor referred to Wizel's possible gambling addiction and a " 'serious drug addiction.' "  In February 2007, Brown accused Ezor of not fulfilling his duties as co-trustee based, in part, on his failure to file a petition to remove Wizel as co-trustee.

In March 2007, Ezor's counsel wrote to Solarz regarding the selection of a licensed physician to evaluate Wizel and expressing concern that Wizel's mail was being sent to her residence such that Ezor did not know what bills were " 'due, owing, and unpaid, including the house mortgage, insurance, and property taxes.' "  Ezor's counsel also wrote to Brown stating that " 'if [Solarz] does not file a Petition we will. The question of [Wizel's] capacity must be determined by the Court after examination by an approved psychiatrist, and whether the Court may wish to appoint a Guardian Ad Litem. . . .' "

Wizel terminated her relationship with Solarz and met with Ezor on April 9, 2007.[2] At that time, Ezor agreed to start working with Wizel as co-trustees. Several days later, Ezor and Wizel paid themselves approximately $10,000 each as an advance for their services as co-trustees. On April 24, 2007, Ezor wrote a letter to Wizel indicating that he had been trying to contact her "for weeks" and that he wanted to discuss the " 'balance of trust matter[s] including final distribution. . . .' " On May 3, 2007, Ezor's counsel wrote Brown that Wizel " 'has cooperated fully in her duties as Co-Trustee,' " and " '[a]s such, there is no reasonable basis to ask the Court to remove her as Co-Trustee.' "

3.    *Distribution of the Condo*

On May 25, 2007, Ezor and Wizel filed a petition for instructions, in part, about the Condo to be distributed by the Trust. The Condo had been purchased by Lydia Wizel with a $100,000 downpayment. Brown was living at the Condo and sought $40,000 in reimbursements from the Trust for expenditures related to the Condo. Ezor and Wizel requested instructions from the court "concerning possible expenditures" made by Brown and as to whether to list the Condo for sale or transfer the Condo to Brown. The court denied Brown's request for reimbursement on the grounds that he had not paid sanctions previously ordered by the court. The court also authorized the

---

2    When Wizel terminated her services with Solarz, her outstanding attorney fee bill was $76,873.93.

6

co-trustees to levy 50% of the fair rental value of the Condo to Brown's account for the period of Brown's occupancy.

Ezor and Wizel subsequently distributed the Condo to Brown and valued it at the date of death value of $490,000 without any credit for the $390,000 mortgage on the Condo. Brown filed a motion to allow the return of the Condo to the Trust on the grounds that the Condo had liabilities in excess of its value. It is unclear how the court ruled on this motion because no corresponding minute order is in the record. The Condo was eventually foreclosed upon.

4. *The Trust's Payment of Wizel's Bills*

As trustee, Ezor undertook to pay Wizel's bills. He relied on Wizel to bring in any bills that needed to be paid and then advanced money to Wizel to pay those bills. He also paid Wizel's medical insurance premiums. Ezor did not take steps to have Wizel's bills directed to his office.

On January 15, 2008, Ezor approved a sub-trust (Sub-Trust) for the benefit of Wizel, and appointed Herb Cohen as Wizel's co-trustee of the Sub-Trust. However, Ezor did not fund the Sub-Trust for several months and continued to advance money to Wizel to pay bills that she brought in to him. Ezor assumed that Wizel's medical insurance premiums were being paid during this time because Wizel did not bring him the bill. On March 27, 2008, Ezor sent a check to Cohen to fund the Sub-Trust, however, Ezor instructed that the entire check amount was to be applied to a mortgage payment. The Sub-Trust was next funded in May 2008. Wizel's medical insurance was terminated effective May 23, 2008. On September 3, 2008, Cohen informed Wizel that

7

there was approximately only $24,000 in cash available to her in the Trust based on an account indicating that Wizel had been advanced approximately $100,000.

5. *The Petitions, Account and Motion for Reconsideration*

In September 2008, Brown filed a Petition for Instructions seeking to have Ezor and Wizel removed as co-trustees, to have them surcharged for breaching their duties to the Trust, and for an account for the entire period of trust administration, among other requests. In May 2009, Ezor submitted an account for the period between February 9, 2007 through January 31, 2009. Brown filed objections to the account on the grounds that: (1) the account was incomplete; (2) had not been verified by Wizel; (3) did not account for certain assets; and (4) reflected excessive fees paid to the trustees, among other objections. Ezor later filed a "supplement" to the account consolidating all previous accounts.

In August 2009, the Court removed Wizel as co-trustee, suspended Ezor as co-trustee, and named Brown to replace Wizel.[3] Ezor filed a motion for reconsideration regarding the suspension. In November 2009, the court vacated the order suspending Ezor but deferred the issue of what powers Ezor could exercise until trial.[4] In

---

[3] The grounds for the court's order are unknown as Ezor has not included the order in the record.

[4] The grounds for the court's order are unknown as Ezor has not included the order in the record.

8

December 2009, Ezor filed a Petition for Allowance of Fees asking for payment of his attorney fees, costs and accounting fees, among other requests. In January 2010, the court appointed Ellie Page (Page) as the permanent conservator over the person and estate of Wizel.[5] Page also filed objections to the excessive attorney and trustee fees reflected in the account.

### 6. *Trial*

The matter came on for a bench trial starting in May 2010. The trial covered five pending matters before the court: (1) Brown's Petition for Instructions seeking to have the co-trustees surcharged for the breach of their duties to the Trust; (2) objections by Brown to the account filed by Ezor; (3) Ezor's motion for reconsideration of the order suspending him as trustee; (4) Ezor's Petition for Allowance of Fees; and (5) the Petition for Instructions filed by Page seeking to surcharge Ezor for his breach of Trust.

Two psychiatrists testified at trial about Wizel's mental competence to serve as trustee. Dr. Stephen Read testified that Wizel had the mental competence of an 8 or 9 year old child based on her impaired executive function, her inability to generate direction or take responsibility, and her lack of maturity. Dr. Lukas Alexanian testified that Wizel was not continuously impaired but that, at times, she was competent and able to care for herself.

---

[5]     The grounds for the court's order are unknown as Ezor has not included the order in the record.

Ezor testified that he formed the opinion that Wizel was competent to act as a trustee based, in part, on observing Wizel at their first meeting and concluding that she was coherent and articulate and exhibited "normal" behavior. He further testified that Wizel always cooperated with him in performing their duties as trustees, helping him with the accounting and review of petitions, among other tasks.

Ezor's testimony was undercut by that of Pamela Riet, an employee at Wachovia Securities, who testified regarding Wizel's attempts to withdraw money from the Trust account between 2007 and 2009. Riet testified that, when Wizel came to the bank, she seemed confused, paranoid and desperate and talked about not having food and water. Riet further testified that she always called Ezor to inform him when Wizel came to the bank. Riet also asked Ezor if Wizel could be removed as trustee and Ezor told her that unless Wizel was a danger to herself or others, his hands were tied.

7.    *The Judgment*

The court concluded that Ezor should have known that Wizel was not competent to act as his co-trustee, and that he breached his duties as trustee by allowing Wizel to serve in that capacity.[6] The court further found that Wizel "was not acting as a co-Trustee, but as a puppet to facilitate [Ezor's] actions." The court disagreed with Ezor's argument that Wizel's acceptance of fees and distributions from the Trust

---

[6]    This was a 14-day trial and the court issued an extensive, reasoned 55-page statement of decision.

10

absolved him of liability for damages on the grounds that Wizel was not competent to serve as trustee and did not understand what her duties as trustee were.

The court further found that Ezor's account was insufficient and that Ezor's opposition to Brown's and Wizel's objections to the account was without reasonable cause and in bad faith. With respect to Wizel's medical insurance policy, the court concluded that Ezor was responsible for the lapse of insurance because he knew about Wizel's limitations and dependence on the Trust to pay her bills and, although he usurped the Sub-Trust co-trustee's ability to act by limiting the funding of the Sub-Trust, he did not act to ensure that her insurance premiums were paid. The court also concluded that had the Trust been divided pursuant to its terms and the Condo distributed to Brown, Brown would have had enough funds to support the Condo payments and might not have lost the property to foreclosure.

The court concluded that Ezor had breached his duties as trustee in the following ways: (1) he reimbursed Wizel for expenses and created a sub-trust for her, but failed to do the same for Brown; (2) he paid himself excessive fees but did little work to benefit the Trust; and (3) he delayed administration of the Trust and failed to divide the residual estate into two sub-trusts.

The court entered judgment against Ezor for $511,125.00 calculated as follows: (1) overpaid fees to Ezor and his attorney in the amount of $60,750; (2) loss to Brown in the amount of $242,809 based on the value of the assets Brown would have received had the Trust been divided at the time of the settlor's death; (3) $100,000 in equity in the Condo lost to foreclosure; and (4) loss of $107,566 to Wizel due to the lapse of her

11

medical insurance.  The court also surcharged Ezor $204,901.50 for attorney fees related to his opposition to the objections to the account.  The court later entered an amended court judgment with reduced damages against Ezor in the amount of $281,332[7] as well as attorney fees and costs in the amount of $204,901.50.  Ezor filed a timely notice of appeal.

## DISCUSSION

1.    *Standard of Review*

"We presume that the court's order is supported by the record; if there is substantial evidence in the record to support the court's implied finding of fact, the factual finding will be upheld.  However, the conclusion the court reached based upon those findings of fact will be reviewed by this court for abuse of discretion."  (*Higdon v. Superior Court* (1991) 227 Cal.App.3d 1667, 1671.)  We apply the de novo standard of

---

[7]    The reduced damages award was based on the court's revised calculation of damages based on the following considerations:  (1) in the initial damages award, the value of the Condo had been assessed twice, both as a separate item and also as part of Brown's direct losses; (2) the initial damages award had also surcharged Ezor the amount of fees paid to him and his counsel both as a separate item and as part of Brown's direct losses; (3) the initial damages award did not take into account the amount of funds turned over to Brown when he was appointed trustee or funds distributed to Brown upon the court's order; and (4) the court concluded that Ezor should be credited the amount of funds he expended to operate the Trust up to June 30, 2007 based on the court's conclusion that the Trust should have been distributed by that date.

12

review when determining whether the court applied the proper standard of proof. (*Owen v. Sands* (2009) 176 Cal.App.4th 985, 989.)

2.      *The Court Did Not Err By Allowing Dr. Read's and Bruno's Testimony*

Ezor contends that the court abused its discretion by allowing Dr. Stephen Read to testify as to an opinion that was outside the scope of his deposition testimony. Specifically, Ezor contends that the court should not have allowed Dr. Read to testify that Wizel's mental deficits impaired her ability to appreciate the consequences of her acts as a trustee. A judgment may not be reversed by reason of the erroneous admission of evidence unless "[t]here appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and was so stated as to make clear the specific ground of the objection or motion." (Evid. Code § 353, subd. (a).) Here, Ezor does not dispute that he failed to raise an objection at trial on this issue. As a result, the objection has been forfeited.

Ezor also contends that the court abused its discretion by allowing Gene Bruno to testify about Wizel's healthcare costs after the judge disclosed that she had a personal connection to Bruno. Again, Ezor failed to raise an objection on these grounds. Ezor argues that he did object because his counsel, upon being informed by the judge that her children were friendly with Bruno's children, stated "[w]ell, I don't know. You need a new expert." However, this comment is not a valid objection because it does not

13

"make clear the specific ground of the objection."[8]  (Evid. Code § 353, subd. (a).)

Moreover, even if it was error to admit Dr. Read's and Bruno's testimony, Ezor has not explained how the result was prejudicial to him.  (Evid. Code § 353, subd. (b) [A judgment shall not be set aside by reason of the erroneous admission of evidence unless "[t]he court which passes upon the effect of the error or errors is of the opinion that . . . the error or errors complained of resulted in a miscarriage of justice."]; *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800 [A "miscarriage of justice" will be declared only when the appellate court concludes that "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error."].)

3.    *The Court Did Not Err By Excluding Evidence of Brown's "Unclean Hands"*

Ezor contends that the court's exclusion of evidence concerning Brown's "unclean hands" deprived Ezor "of the ability to present relevant evidence to meet his burden of proof."  Ezor points to evidence that Brown made "misrepresentations" when he sought to be appointed as trustee, that Brown took actions as trustee in violation of court orders, and that Brown misused funds from the Trust.

The probate court correctly noted that any breach by Brown of his duties as trustee would not be attributed to Ezor, who acted as trustee at a different time.

---

[8]    Moreover, Ezor's contention that the judge was biased against him such that she would have disregarded any objection his counsel asserted is completely unsupported by the record.

14

Furthermore, the doctrine of "unclean hands" is only applicable to plaintiffs found guilty of improper conduct, and here, Brown is not a plaintiff. (*Yu v. Signet Bank/Virginia* (2002) 103 Cal.App.4th 298, 322 [" 'The [unclean hands] doctrine demands that a plaintiff act fairly in the matter for which he seeks a remedy.' "].) Therefore, the court did not err by excluding evidence of Brown's "unclean hands."

4.     *The Court Did Not Err in Finding that Wizel's Acceptance of Funds From Ezor Was Not a Defense to Ezor's Breach of His Duties As Trustee*

Ezor contends that the court erred by disregarding his argument that Wizel was precluded from "seeking relief" because she had accepted benefits from the Trust. "[W]here a beneficiary has consented to a course of conduct and transactions by the trustee, he cannot later attack such transactions. [Citations.]" (*De Vrahnos v. George* (1962) 203 Cal.App.2d 210, 223.) Here, the court found Ezor liable for allowing Wizel's medical insurance to lapse because he failed to pay the insurance premiums. Although a beneficiary may not challenge a transaction that she consented to, Ezor had not identified any evidence indicating that Wizel consented to his nonpayment of her insurance premiums. Therefore, Ezor has not shown that the court erred by rejecting this defense.

5.     *Substantial Evidence Supported the Court's Finding That Wizel Was Not Competent to Act As Trustee*

Ezor contends that the court erroneously found that Wizel lacked the mental capacity to act as a trustee. Ezor's contention is, in essence, an argument that substantial evidence does not support the court's finding. In support of this argument, Ezor contends that Dr. Read's psychiatric evaluation of Wizel was challenged by

15

Dr. Alexanian's testimony, and that there was evidence that Wizel "was functioning relatively well" when she met Ezor and "might have appeared normal."

Ezor's argument that one expert's testimony was more persuasive than that of another is irrelevant to our analysis. We are not allowed to re-weigh the evidence, and must view the evidence in the light most favorable to the respondent. (*Estate of Isenberg* (1944) 63 Cal.App.2d 214, 216-217.) The trial court concluded that Wizel lacked the capacity to act as trustee based on evidence that Wizel was hospitalized for psychosis in December 2006, the declarations of five of Wizel's relatives and friends stating that Wizel was not mentally capable of performing basic tasks, the testimony of Pamela Riet at Wachovia Securities that Wizel seemed paranoid and confused when she attempted to withdraw funds from the Trust, and the testimony of Dr. Read that Wizel had the mental competence of an 8 or 9 year old, among other evidence. This constitutes substantial evidence supporting the trial court's determination that Wizel was not competent to serve as trustee.

6. *The Court Applied the Proper Standard of Proof*

Ezor argues that the court should have applied the clear and convincing evidentiary standard to findings that Ezor exercised undue influence upon Wizel. Ezor cites to the court's finding that "Wizel was not acting as a co-trustee based on her inability to do so. Fees paid to her were part of Ezor's master plan of manipulation and payments to Wizel were to ensure her compliance and not as compensation for her services." However, the issue addressed by the court was Wizel's competence to serve as a trustee, not whether Ezor was liable for undue influence. Ezor does not dispute that

16

the court properly applied the preponderance of evidence standard to findings related to Wizel's fitness to serve as a trustee.  (*People v. Jason K.* (2010) 188 Cal.App.4th 1545 ["proof by a preponderance of the evidence generally suffices to satisfy due process in civil cases"].)

      7.     *The Court Properly Found That Ezor Was Personally Liable for Damages*

Ezor contends that the court abused its discretion when it found that Ezor was personally liable for his actions as trustee because Ezor presented unrebutted expert testimony that Ezor acted reasonably in his capacity as a trustee.  Ezor cites to Probate Code section 16650, subdivision (b), which provides that if a trustee who commits a breach of trust "has acted reasonably and in good faith under the circumstances as known to the trustee, the court, in its discretion, may excuse the trustee in whole or in part from liability [for loss resulting from the breach of trust] if it would be equitable to do so."  Ezor appears to be arguing that the court should have exercised its discretion to excuse Ezor from his breaches of duty as a trustee based on grounds of equity.

Expert testimony may be rejected by the trier of fact even if the expert is uncontradicted provided that the rejection is not arbitrary.  (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 890.)  Here, although Ezor's expert testified that Ezor acted reasonably in his capacity as a trustee, the record contained substantial evidence supporting the conclusion that it would not be equitable to excuse Ezor from his breaches of duty as a trustee.  This included evidence that Ezor knew that Wizel was incompetent to serve as trustee, that he did not administer the Trust within a reasonable amount of time, and that he paid himself excessive fees, among other facts.  Therefore,

17

the court did not abuse its discretion in refusing to excuse Ezor from his breaches of duty as a trustee.**⁹**

8. *The Court Properly Found That Brown and Page Contested the Account*

Ezor objects to the court's award of attorney fees, arguing the court abused its discretion in finding that Brown and Page "contested" his account. In awarding attorney fees, the court relied on Probate Code section 17211, subdivision (b), which provides that "[i]f a beneficiary contests the trustee's account and the court determines that the trustee's opposition to the contest was without reasonable cause and in bad faith, the court may award the contestant the costs of the contestant and other expenses and costs of litigation, including attorney's fees, incurred to contest the account."

Ezor filed an account on June 26, 2009. Brown objected to the account after which Ezor filed a "supplement" to the account. The court held that "[t]he Supplement was not filed as a new or amended account. . . . The Objections to the Account filed [by Brown] are still relevant to this matter since they relate to the time period covered in both the original account filed on May 21, 2009 and the expanded time period also described in [the Supplement filed by Ezor on October 9, 2009], both pleadings included the time during which the breaches of trust occurred. Objector was not

---

⁹ Ezor also argues that "in light of the standards for personal liability of a trustee" the court erred by holding him personally liable for his actions as a trustee. Ezor cites to several statutory provisions, several cases and multiple provisions of the Trust in support of this argument but does not explain how he believes the court's findings were not supported by these provisions.

18

required to file additional objections to the Supplement." Ezor argues that Brown's objections to Ezor's initial accounting were mooted when Ezor filed a supplement to that account, and that therefore, there was no "contest" to the account. Ezor also argues that Page did not "contest" the account because she only objected to the attorney and trustee fees recorded in the account.

Ezor does not dispute that he failed to raise these arguments in the trial court, and has therefore, forfeited them. (*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2006) 136 Cal.App.4th 212, 226.) Furthermore, Ezor does not cite to any authority in support of his contention that Brown did not "contest" the account because he did not re-file his objections when Ezor supplemented the account. Likewise, Ezor does not cite to supporting authority for his argument that objections to excessive attorney and trustee fees noted in an account are not a "contest" to the account.

The phrase "contests the trustee's account" in Probate Code section 17211, subdivision (b), is not defined within the statute, but the statute is remedial and thus, should be read liberally to apply to contested matters "relating to an account." (*Leader v. Cords* (2010) 182 Cal.App.4th 1588, 1596-1598.) With respect to Brown's objections, Ezor's subsequent supplementing of his account covered the same matters as the original account and was not filed as a new account. Therefore, Brown's objections to the account remained at issue. With respect to Page's objections to the attorney fees and trustee fee awards in the account, even if these did not directly contest the account,

19

they certainly contested matters "relating to an account" and therefore, fall under Probate Code section 17211, subdivision (b).[10] (*Id.* at p. 1598.)

9. *The Court Did Not Award Excessive Damages*

Ezor raises five arguments. Ezor contends that the court should have adjusted the damages award as follows: (1) the court should have credited Ezor for the expenditures he made to preserve Trust property; (2) Brown's award should have been reduced based on the Condo rent Ezor deducted from Brown's share of the Trust; (3) the court should have credited Ezor for the funds turned over to Brown when he became trustee; (4) the court erred in concluding that Brown was entitled to damages for the loss of the Condo; and (5) the court erred in finding that Ezor was responsible for Wizel's lapse in medical insurance.

The court found that had the Trust been divided pursuant to its terms and distributed in a timely fashion, Brown would have received $242,809 in cash and real estate less amounts expended to administer the Trust within a reasonable amount of time. Accordingly, in calculating Brown's loss due to Ezor's breaches of his duties as trustee, the court deducted from the $242,809 half of Ezor's expenses for Trust operations up June 30, 2007. Based on the finding that the Trust assets should have been distributed by June 30, 2007, the court refused to credit Ezor for expenses incurred

---

[10] Ezor also argues that the court overestimated the proportion of attorney fees incurred by the beneficiaries in contesting the account. We do not find that the court abused its discretion in determining which tasks performed by Brown's and Wizel's attorneys related to contesting the account.

20

for trust administration after that date. Likewise, the court did not deduct from Brown's share of damages the rent assessed against him for his use of the Condo on the grounds that this occurred after June 30, 2007.

Substantial evidence supports the court's conclusion that Ezor unreasonably delayed by not administering the Trust by June 30, 2007. In fact, Ezor does not dispute that the period between the settlor's death on March 27, 2006 and June 30, 2007, was a reasonable amount of time within which the Trust should have been administered.[11] Therefore, expenses incurred to maintain Trust property after that date were due to Ezor's failure to administer the Trust in a reasonable amount of time and should not have been charged to the beneficiaries.

With respect to the funds turned over to Brown as trustee, the court issued an amended judgment that adjusted the damages award to take into account these funds.[12]

With respect to the Condo, Ezor contends that the court erred in finding that the foreclosure was caused by Ezor's failure to make distributions to Brown. Ezor argues

_____

[11] Ezor incorrectly argues that the court's damages award did not account for any of the expenditures he made to operate the Trust. Ezor ignores the court's February 14, 2012 minute order that amended the damage award to give Ezor credit for expenses related to trust operations up to June 30, 2007.

[12] Although Ezor argues that $93,424.17 was turned over to Brown when he became trustee, the court found that only $75,649.45 had, in fact, been turned over to Brown. Ezor cites to his account as evidence that $93,424.17 had been turned over to Brown, but the court found that Ezor's account was inaccurate.

21

that the evidence established that Brown did not pay the mortgage after he received title to the Condo in March 2009. However, Ezor distributed the Condo to Brown three years after the death of the settlor and only after the value of the Condo had sunk below that of the mortgage on the property. Therefore, evidence that Brown did not make mortgage payments at that time did not absolve Ezor of the total loss in value of the property due to his delays.

Lastly, Ezor contends that the court erred in finding that he was responsible for the lapse in Wizel's medical insurance. Ezor argues that the testimony at trial established that the Sub-Trust trustee, Cohen, admitted that he knew the medical insurance premium "was due" and that he also knew he had two months within which to make the payment. The record cited by Ezor does not show that Cohen testified to those facts. In fact, in the cited testimony, Cohen only testified that he had received the medical insurance bill sometime prior to August 20, 2008. Wizel's medical insurance was terminated effective May 23, 2008. Ezor also argues that after the trial, his counsel discovered that Cohen had concealed evidence showing that he had written a check to pay Wizel's health insurance premium. We cannot consider this argument or alleged new evidence for the first time on appeal. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1138.)

## *DISPOSITION*

The judgment is affirmed. The respondents shall recover their costs on appeal.

### *NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*

22

CROSKEY, Acting P. J.

WE CONCUR:

KITCHING, J.

ALDRICH, J.